**In the Matter of the PROPERTY SEIZED ON OR ABOUT NOVEMBER 14–15, 1989.**

**Kenneth Dale French, Appellant.**

No. 91–1681.

Supreme Court of Iowa.

June 16, 1993.

Thomas M. Walter of Johnson, Hester & Walter, Ottumwa, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Gerald N. Partridge, County Atty., and Barbara A. Edmondson, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

CARTER, Justice.

Kenneth Dale French, the owner of allegedly illegal coin-operated gaming machines, appeals from an order for the forfeiture of those machines, other gaming machines, and other real and personal property allegedly acquired through the proceeds of those machines. After considering the arguments presented, we affirm the judgment of the district court.

On November 14–15, 1989, a large amount of property was seized from appellant. This included his house, warehouse, various cars, bank accounts, certificates of deposit, amusement machines, race cars, trailers, and numerous personal possessions. French had accumulated large amounts of money and possessions.

The Washington County Attorney filed an application for the forfeiture of this property on November 14–15, 1989. This was amended on December 18 to include a number of video "poker" machines and twenty-three pages of previously unlisted property. French filed formal requests for the return of all property that the State sought to forfeit.

It has been the State's theory throughout this proceeding that all of the allegedly forfeitable property that was not illegal to possess was acquired with the proceeds from illegal gaming machines owned or possessed by French. French denies this and also urges that the machines in question were amusement devices authorized under Iowa Code section 99B.10 rather than prohibited gambling devices.

The forfeiture hearing was held on February 6–9, 12, 1990, and June 4–5, 1990. Shortly before the hearing, a proposed stipulation was discussed, on the record and with appellant present, in chambers. At the opening of the hearing, French's attorney presented the stipulation for approval. Because the State's counsel was unclear on the extent of the proposed stipulation, the court sought to clarify it on the record. To initiate that effort, the court stated:

Let me tell you what I think Mr. Parrish [French's attorney] has agreed to. Mr. Parrish has agreed that his client will consent to a forfeiture of all of the property which you have listed as items that you want forfeited, except certain items. One of the exceptions is any security interest which the West Chester Bank might have. The second exception is the security interest which Mountain Coin might have. The third exception is any equity which Mr. French might have in his house. The fourth exception is any equity he might have in his warehouse. The fifth exception is the children's property. And the sixth exception, and the last exception, is land which adjoins ... his house.

Counsel for the State and counsel for French agreed to the stipulation as reiterated by the court. French said nothing.

On February 12, 1990, the court asked both sides to identify the property that remained in dispute. The response received to this question indicated that French intended to repudiate the terms of the stipulation. This became even more clear on March 5 when French filed a formal request for that purpose along with an affidavit stating that he never intended to agree that his interest in any of the property sought by the State was a proper subject of forfeiture.

In a lengthy ruling dated December 5, 1990, the court denied French's request to rescind the stipulation and granted the State's forfeiture application as to French's interest in all of the property for which forfeiture was sought. It reserved until a later time the disposition of interests of third parties in and to certain of that property.

Evidence was presented that French received extensive revenues from the illegal gaming machines owned by him and placed for use at various locations. In addition,

books and records (French kept two sets of books) were offered in evidence that indicated that the proceeds from the illegal gaming operations had to be the primary source of the money used to acquire the other assets that were forfeited.

In addition to invoking the stipulation for forfeiture, the court, as to all of the items sought to be forfeited, made findings of fact on the merits sufficient to sustain forfeiture under Iowa Code section 809.6 (1991). The court, in keeping with the definitions of section 809.1, expressly found the poker machines to be illegal gambling devices, and that the other property forfeited had been acquired through proceeds received from these illegal machines.

On appeal, French challenges the court's refusal to permit him to repudiate the stipulation and also challenges the court's legal conclusion that the poker machines were illegal gaming devices. Other facts material to our decision will be discussed in connection with the legal issues presented.

## I. Refusal to Allow Repudiation of Stipulation.

French urges that the district court erred in refusing to permit him to repudiate the stipulation made concerning forfeiture of the bulk of the items contained in the State's application. He argues that to invoke the stipulation is tantamount to "binding the court's determinations as to questions of law, i.e., that possession of the 'pokers' was illegal."

We conclude that the court did not act improperly in holding French to the terms of the agreement that his counsel approved on the record in the court proceeding. We have recognized that stipulations in formal litigation may be of two kinds: those that are a mere admission of fact, relieving a party from the inconvenience of making proof, and those that constitute a concession of entire issues in the litigation. See Graen's Mens Wear, Inc. v. Stille–Pierce Agency, 329 N.W.2d 295, 300 (Iowa 1983).

The stipulation at issue here was obviously of the latter type. Such agreements, which are tantamount to a consent decree as to part of the case, are not against public policy. We have recognized that in such situations

a court's role in approving a consent decree involves a determination of whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues in the litigation. It is not necessary in order to uphold the validity of a consent decree that the solutions therein contained be those the court itself would have adopted if it were adjudicating the controversy.

World Teacher Seminar, Inc. v. Iowa Dist. Court, 406 N.W.2d 173, 176 (Iowa 1987). There is no merit in French's contention that the agreement in question infringed on the role of the court in deciding legal issues.

To the extent that our decision in Van Donselaar v. Van Donselaar, 249 Iowa 504, 87 N.W.2d 311 (1958), suggests that consent to judgment may be withdrawn as of right at any time prior to actual entry of judgment, that view is now specifically disapproved. We have recognized that a stipulation for disposition of an entire issue is entitled to all of the sanctity of an ordinary contract if supported by legal consideration. Graen's Mens Wear, 329 N.W.2d at 300. In the present case, the State made concessions as to criminal prosecution of French in exchange for the stipulation that designated items could be forfeited. This was a sufficient ground to cause the court to refuse French's efforts to withdraw the stipulation.

We also believe that, even when an enforceable contract has not been made out, a court may consider the effect that repudiation of a stipulation will have on the expeditious processing of the case. If a scheduling decision or other major procedural step in the litigation has been made in reliance on a stipulation of either type described in Graen's Mens Wear, that circumstance may be considered by the court on later motions to set the stipulation aside. If the effect of releasing the party from the stipulation will cause an unneces-

sary burden on the court system, that circumstance may support the court's exercise of discretion against allowing a change of position. That was the situation in the present case. The district court did not abuse its discretion in refusing to relieve French from the terms of the stipulation entered into on the record when, as here, the motion for such relief came nearly four weeks into the trial.

## II. *Whether the "Poker" Machines Were Illegal Gambling Devices.*

We next consider French's claim that the so-called "poker" devices were not illegal gambling machines subject to forfeiture under Iowa Code section 809.6. This argument has two basic premises. First, that the machines in question were legal as amusement devices under Iowa Code section 99B.10. Second, that, even if they did not qualify as amusement devices under that statute, the machines do not meet the basic definition of an illegal gambling device. We reject both of these contentions.

The so-called "pokers" do not qualify as lawful amusement devices under section 99B.10 because the evidence clearly established that they contained devices that enable the possessor of the machines to release free game credits and also contained meters for retaining the results of prior performance by the users of the machines. Those features disqualify the machines from use as legal amusement devices based on the requirements of Iowa Code section 99B.10(2). In addition, there was evidence that the odds of winning on the machines could be varied by settings made by the possessor of the machines. That feature would also disqualify these machines from qualifying as legal amusement devices. *See* Iowa Code § 99B.10(3) (1991).

As to French's contention that, apart from section 99B.10, the machines are otherwise not gambling devices, the controlling definition is found in Iowa Code section 725.9(3). That statute provides:

> *"Gambling device"* means a device used or adapted or designed to be used for gambling and includes, but is not limited

to, roulette wheels, klondike tables, punchboards, faro layouts, keno layouts, numbers tickets, slot machines, pinball machines, push cards, jar tickets and pull-tabs. However, "gambling device" does not include an antique slot machine, antique pinball machine, or any device regularly manufactured and offered for sale and sold as a toy, except that any use of such a toy, antique slot machine or antique pinball machine for gambling purposes constitutes unlawful gambling.

The evidence supported the trial court's finding that the machines in question were gambling devices under this definition.

French suggests that the adaptation of the machines to include devices for the release of free games and meters for retaining information as to past performances may have been performed by the proprietors of the locations where the machines were placed for use. He also suggests that any gambling that occurred through the use of the machines at those locations may have been the sole project of those proprietors occurring without his knowledge. The evidence strongly refutes these contentions.

Testimony was offered at the trial from French's key employee that French was responsible for the illegal alterations placed on these devices and that he shared in the proceeds from the illegal gaming activities with the proprietors of those establishments where the machines had been placed. Consequently, there was substantial evidence in the record to support the district court's findings that French possessed these machines for an illegal purpose. French does not challenge the additional finding that the other items forfeited were shown to have been acquired through proceeds derived from the illegal gaming machines.

We have considered all arguments presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**