**In re the MARRIAGE OF John Roy ASK and Josephine Mary Ask.**

**Upon the Petition of John Roy Ask, Appellant,**

**And Concerning Josephine Mary Ask, Appellee.**

No. 95–62.

Supreme Court of Iowa.

July 24, 1996.

**644**

James W. Ramey, Des Moines, for appellant.

Robert H. Laden of Hyland, Laden & Pearson, P.C., for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

Husband appeals from alimony provision of his dissolution decree. He contends the (1) award of alimony with no termination is excessive, and (2) district court should have granted his motion to reopen the record. We affirm.

John Roy Ask and Josephine Mary Ask were married in 1958. At the time of the dissolution, John was fifty-eight. He had been employed throughout the marriage. At the time of the dissolution hearing, John was employed by the city of Des Moines and was on temporary medical leave. His take home pay was $2230 per month. John testified that he was planning to return to work but intended to retire before March 31, 1995, about six months from the date of the dissolution hearing. If he elected to take the monthly annuity, John would receive about $1590 from his Iowa Public Employees' Retirement System (IPERS) account.

At the time of the dissolution hearing, Josephine was sixty-two and unemployed. She had a ninth-grade education.

The couple had (1) $79,215.97 in two joint bank accounts, (2) owned no real estate, and (3) had no minor children who would be affected by the outcome of the dissolution.

Under a temporary alimony order, John was to pay Josephine $1000 per month. He never made any payments. At the time of the dissolution hearing, he was $4000 delinquent in these payments.

At the dissolution hearing on September 20, 1994, both parties were represented by counsel. Apparently, before the hearing started, the parties and their attorneys discussed settlement for several hours. At the hearing, both counsel questioned the parties carefully. Both parties testified they understood and agreed with all of the provisions of the agreement they had reached. Both testified that once they left the courtroom the agreement was final.

The parties stipulated to the following terms. Josephine would waive the $4000 delinquency in temporary alimony. John would pay Josephine the $1000 monthly temporary alimony until he retired. At his retirement, John would pay Josephine one-half of his monthly IPERS payment through a mandatory income withholding order. The payment would be considered alimony taxable to Josephine. John would also name Josephine as the contingent beneficiary of the IPERS account. Josephine would be responsible for her own medical insurance. The parties would combine their social security benefits and each would receive one-half of the combined amount. Any excess in social security benefits to Josephine would be considered alimony and taxable to her. Of the cash on hand, Josephine would receive $44,107.98 and John would receive $35,107.99. Each would keep the personal property in their possession at the time of the hearing.

The parties would pay their own attorney fees and split the costs.

At the conclusion of the testimony, the district court directed Josephine's attorney to prepare a decree and present it to the court for signature.

Shortly after the hearing, John discharged his attorney and retained new counsel. On October 10, John's new attorney filed an "application for reconsideration and to reopen the record and expand the court's ruling," which Josephine resisted. The court set a hearing on the matter for October 28.

Josephine's attorney then presented the district court with a decree incorporating all of the terms the parties had stipulated to at trial. The court filed the decree on October 17. John then filed an "application to set aside or stay the decree of October 17, 1994." The court consolidated John's applications and continued the hearing to November 30. On December 8, following a hearing, the court denied the motions.

John appealed.

We review equitable actions de novo. Iowa R.App. P. 4.

■ I. John first contends that the award of alimony in the amount of one-half of his income with no termination set is excessive in light of the facts presented to the court. He complains that the attorneys did not ask the parties anything about past, current, or future employment or possibilities of employment for Josephine. He also complains because there were no questions about contributions each had made to the family or the potential earning capacity of the parties. He concludes that because none of these questions were asked, the district court had no evidence concerning the statutory factors for an alimony award. Because this evidence was lacking, John thinks the district court should have let him reopen the record to present it.

We reject John's contentions for two reasons.

■ First, any form of alimony is discretionary with the court. *In re Marriage of Wessels*, 542 N.W.2d 486, 490 (Iowa 1995). Before awarding alimony, the district court is required to consider the factors listed in Iowa Code section 598.21(3)(1993). These factors include (1) the length of the marriage; (2) the age, physical, and emotional health of the parties; (3) the property distribution made in the dissolution decree; (4) the educational levels of the parties; (5) the earning capacity of the party seeking maintenance; (6) the ability of the party seeking maintenance to become self-supporting at the standard of living enjoyed during the marriage; (7) the tax consequences to each party; (8) any mutual agreements by the parties concerning financial or service contributions; (9) the provisions of any antenuptial agreement; and (10) any other factors the court determines relevant on a case-by-case basis.

Contrary to John's contention, the attorneys did present evidence concerning these statutory factors. The length of the marriage was thirty-six years. John was fifty-eight and Josephine was sixty-two. John was on medical leave from his job because of an injury. He was contemplating retirement. Both parties were nearing the age when they could draw social security; John would be drawing more than Josephine. Josephine was unemployed and had only a ninth grade education. Given Josephine's age, lack of education, and unemployment, she would likely remain unemployed. Unlike John, Josephine has no pension or similar job benefits to fall back on. The only substantial property the parties owned—the cash—they divided nearly equally. The tax consequences concerning the alimony were mentioned.

■ Second, we conclude John and Josephine reached a binding stipulation regarding alimony, which he had no legal right to repudiate. This was a stipulation that conceded an entire issue. Such a stipulation is "tantamount to a consent decree" as to the alimony issue and is not against public policy. *In re Property Seized Nov. 14–15*, 501 N.W.2d 482, 485 (Iowa 1993) (state's concessions as to criminal prosecution of gaming machine owner in exchange for stipulation that designated items be forfeited provided sufficient grounds for refusal to allow owner to withdraw stipulation of forfeiture). We

**646**

have described the district court's role in approving a consent decree this way:

> [A] court's role in approving a consent decree involves a determination of whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues in the litigation. It is not necessary in order to uphold the validity of a consent decree that the solutions therein contained be those the court itself would have adopted if it were adjudicating the controversy.

*Id.*

A party is not entitled as a matter of right to withdraw a stipulation for disposing of an entire issue at any time before actual entry of judgment. *Id.* Such stipulations are entitled "to all of the sanctity of an ordinary contract if supported by legal consideration." *Id.* (citing *Graen's Mens Wear, Inc. v. Stille–Pierce Agency,* 329 N.W.2d 295, 300 (Iowa 1983)).

We are, however, not ousting the district court of its power to determine whether the court should approve the stipulation. In dissolution of marriage matters, for example, the court may determine the stipulation regarding property or support is unfair or contrary to law. In those circumstances, the court retains the power to reject the stipulation.

Here the contested stipulation pertained to the issue of alimony. There was legal consideration in the form of mutual promises to support the stipulation regarding alimony. *See Federal Land Bank of Omaha v. Woods,* 480 N.W.2d 61, 65 (Iowa 1992) (where contract provides for mutual promises, each promise is a consideration for the other promise). The parties acknowledged they understood, and agreed with, all of the provisions of the stipulation. They also acknowledged that once they left the courtroom, the agreement was final. The district court indicated its approval of the stipulation when it directed Josephine's attorney to prepare a decree and present it to the court for its signature. Because the parties agreed to the stipulation and the court approved it, John had no legal right to repudiate it. The dis-

trict court was therefore on solid legal ground when it signed the decree and refused to reopen the record.

II. Josephine asks for an award of appellate attorney fees. Appellate attorney fees are discretionary. *In re Marriage of Gaer,* 476 N.W.2d 324, 326 (Iowa 1991). In determining this question, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *Id.* We think the record supports an award of $750 in attorney fees. Costs are taxed to John.

**AFFIRMED.**