# IN THE COURT OF APPEALS OF IOWA

No. 18-0791
Filed May 15, 2019


**LINDSAY MOSES,**
　　　　Petitioner-Appellant,

**vs.**

**ZACHARY RAY ROSOL,**
　　　　Respondent-Appellee.
_____


　　　　Appeal from the Iowa District Court for Grundy County, George L. Stigler,

Judge.


　　　　Petitioner appeals the award of shared physical care of the parties' minor

child. **AFFIRMED.**

　　　　Lana L. Luhring and Shanna Chevalier of Laird & Luhring, Waverly, for

appellant.

　　　　Heather A. Prendergast of Roberts, Stevens & Prendergast, PLLC,

Waterloo, for appellee.

　　　　Considered by Doyle, P.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Lindsay Moses (Lindsay) appeals the district court's award of shared physical care of the parties' one-and-a-half-year-old child, L.R. She contends the shared physical care decision is not supported by the trial record, asserting Zachary Rosol (Zach) does not have the means to transport L.R. due to the suspension of his driver's license, lacks recognition of L.R.'s special needs, and is unable to communicate appropriately with Lindsay concerning L.R. Lindsay also contends that the "best interests of the child" standard should recognize a special-needs criteria. Finally, Lindsay contends the trial judge did not comply with the rules of civil procedure when he failed to make factual findings in writing to support the ruling. Based upon our review, we affirm.

## I. Factual background.

At trial, Lindsay was twenty-eight years old and residing in a home she is purchasing in Dike, Iowa. She obtained a college degree from the University of Northern Iowa and works at the Cedar Falls Community Credit Union as a loan officer. She primarily works in an office in Cedar Falls but works in Waverly on Thursdays. Her hours are typically 9:00 a.m. to 5:00 p.m., but she is also required to work alternating Saturdays. Lindsay was previously married and has a child, D.B., who at the time of trial was five years old and attended kindergarten in the Dike-New Hartford school district. Lindsay has shared physical care of D.B. with his father on a two day/two day/three day (weekend) rotation.

Zach is also twenty-eight years old. He has a college degree from Upper Iowa University in criminology where he wrestled collegiately. For the past five years he has been employed at Union Tank Car in Waterloo. He cleans, repairs,

and welds rail cars. His work schedule is Monday through Friday from 7:00 a.m. to 3:30 p.m., with some overtime. He can be required to work weekends. His work hours can be flexible if he gives timely notice to his foreman. Zach moved into an apartment in Evansdale, Iowa, a few weeks before the trial, where he is close to work and L.R.'s daycare.

Lindsay and Zach were in a two-year relationship and resided in Lindsay's home in Dike. Near the end of their relationship, Lindsay and Zach had L.R., born in August 2016, who was approximately one and a half years old at the time of trial. Shortly after L.R.'s birth, Lindsay and Zach ended their relationship, and Zach moved out of Lindsay's home. L.R. was diagnosed as having severe hearing loss. His pediatrician referred L.R. to the University of Iowa Hospitals and Clinics, and after testing he underwent bilateral cochlear implant surgeries in the latter part of 2017.

Before L.R. was born, Zach was convicted twice of operating while intoxicated (OWI). These convictions resulted in suspension of Zach's driving privileges until September 22, 2020. He obtained a temporary restricted license (work permit) that allows him to drive to and from work and L.R.'s day care. He completed the OWI probations on September 22, 2017. However, a week or so before discharging his probation, Zach was arrested for driving while barred. That charge was still pending at the time of the custody trial, and its impact on his future driving status was unknown. Zach also participated in mixed martial arts fights to help with his financial obligations but suffered a broken hand and no longer engages in this sport.

After Lindsay ended her maternity leave, the parties utilized Zach's sister-in-law, Shannon Foote,[1] who also lives in Evansdale, for L.R.'s daycare. At trial, both Lindsay and Zach agreed that Shannon should continue to provide the daycare because she is "family," loves L.R., and provides the care for free. However, it requires Lindsay to drive from Dike to Evansdale to drop him off at Shannon's and to drive from her work in either Cedar Falls or Waverly to pick him up. This childcare arrangement is to continue until L.R. is three years old, when he is eligible to start a preschool program in the Dike-New Hartford school district. Zach agrees that L.R. should attend the same school as his half-brother, D.B. in the Dike-New Hartford district, and Zach intends to move to Dike to facilitate this arrangement.

L.R. is a healthy child other than his hearing deficiency, cochlear implants, and its impact on his language and speech development. He is receiving services from Area Education Agency, the University of Iowa, and speech therapy. It is anticipated an Individualized Education Plan will be implemented when he begins attending school. Lindsay has taken classes to learn sign language. L.R. is also learning sign language, and this is one manner in which they communicate. L.R. is being gradually retrained to hear and identify sounds so that he can also learn to talk. The speech therapist instructs L.R.'s caregivers how to teach him to associate sounds and words so that they have meaning and lead to an ability to talk.

Other specific facts related to the issues will be set out below.

---

[1] Shannon is married to Zach's brother, Denver Foote.

## II. Procedural background.

On September 16, 2016, approximately one month after L.R. was born, and while still living with Zach, Lindsay filed her petition to establish paternity, custody, visitation and child support. She requested physical care of L.R. Zach filed his answer and requested shared physical care of L.R. Simultaneously with his answer, Zach filed an application for hearing on temporary matters requesting that the court enter temporary orders in regard to placement and visitation while also requesting shared physical care. On January 4, 2017, the court entered a temporary order placing L.R.'s physical care with Lindsay and awarding Zach visitation. Lindsay was also authorized to select alternative day care if she desired.

On April 3, 2018, the parties filed the required pretrial stipulation with the court, agreeing on joint legal custody but not agreeing on physical care. Trial was held on April 4 and 5. Following the close of evidence, the trial judge dictated his findings into the record with the parties and counsel present. The court made certain credibility findings, including that Zach had made significant changes in his life since L.R.'s birth and that Lindsay possessed a great deal of animosity towards Zach related to their failed relationship and may benefit from counseling. But, the court found the parties were able to communicate when it came to L.R.'s care and determined shared physical care was in L.R.'s best interest. The court then directed Zach's counsel to prepare the order since the court had determined that the shared care order should provide that Lindsay's care of L.R. correspond with her care of D.B. The proposed order was submitted for review to Lindsay's counsel. On April 11, Lindsay filed an "Objection to Proposed Decree" with the

court. On April 13, the court filed the order placing L.R.in the shared physical care of the parties among other rulings. Lindsay then filed a timely appeal of the order.

### III. Discussion.

#### A. Failure by trial court to make written findings pursuant to Iowa Rule of Civil Procedure 1.904(1).

Lindsay points out that the trial judge's dictated findings of fact into the record does not comply with Iowa Rule of Civil Procedure 1.904(1), which requires, "The court trying an issue of fact without a jury, whether by equitable or ordinary proceedings, shall find the facts in writing, separately stating its conclusions of law, and direct an appropriate judgment." Zach points out, on April 11, Lindsay filed a document entitled "Objection to Proposed Decree."[2] The document is not a motion to enlarge or amend findings as provided in Iowa Rule of Civil Procedure 1.904(2). Our court has previously addressed a similar situation:

> We are hampered in our review of this case because the district court made no findings of fact from which its spousal support order is presumably based. Under Iowa Rule of Civil Procedure 1.904(1) the district court was required to find the facts in writing and separately state its conclusions of law. However, [respondent] did not address this deficiency nor did he preserve error by filing a rule 1.904(2) motion asking the district court to enlarge its findings. Nevertheless, we review orders granting temporary spousal support in dissolution of marriage cases de novo. Therefore, we have a duty to examine the record in its entirety and adjudicate the rights and issues presented by the parties based on that record.

*In re Marriage of Allebach*, No. 04-1850, 2005 WL 1965967, at *1 (Iowa Ct. App. Aug. 17, 2005) (internal citations omitted). Even though Lindsay did not preserve this error for appeal, we are to review the record de novo, which included the orally

---

[2] It stated: "COMES NOW Petitioner, Lindsay Moses, and in response to the proposed Decree states that she objects to the Proposed Decree as it is unsupported by evidence presented at Trial and contrary to the requested relief of either party."

dictated findings by the trial court. As rule 1.904(1) further states: "No request for findings is necessary for purposes of review." Although we encourage trial courts to follow the rule, failure to do so does not prevent our de novo review, which follows below.

### B. Whether shared physical care was in the best interest of L.R.

An action for custody and placement is tried in equity and review is de novo. Iowa R. App. P. 6.907. The appellate court is to give weight to the district court's findings of fact, especially with regard to witness credibility, but we are not bound by those findings. Iowa R. App. P. 6.904(3)(g); *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

In child custody cases, the best interest of the child is the first governing consideration. Iowa R. App. P. 6.904(3)(o); *In re Marriage of Vrban*, 359 N.W.2d 420 (Iowa 1984). Iowa Code § 598.1(4) (2016) defines joint physical care as:

> an award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child, including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care of the child and under which neither parent has physical care rights superior to those of the other parent.

Iowa Code § 598.41(3) enumerates the factors the court must consider when determining custody. *See* Iowa Code § 600B.40(2); *In re Marriage of Weidner*, 338 N.W.2d 351 (Iowa 1983); *In re Marriage of Winter*, 223 N.W.2d 165 (Iowa 1974).

The enumerated statutory factors are:

 a. Whether each parent would be a suitable custodian for the child.
 b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
 c. Whether the parents can communicate with each other regarding the child's needs.
 d. Whether both parents have actively cared for the child before and since the separation.
 e. Whether each parent can support the other parent's relationship with the child.
 f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.
 g. Whether one or both the parents agree or are opposed to joint custody.
 h. The geographic proximity of the parents.
 i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.
 j. Whether a history of domestic abuse, as defined in section 236.2, exist.

Iowa Code § 598.41(3).

While the language of section 548.41(3) applies these factors to custody determinations, our supreme court has determined that those factors are also relevant in determining which physical care arrangement is in the best interest of the child. *See In re Marriage of Hansen*, 733 N.W.2d 683 (Iowa 2007). Further, Iowa courts have consistently considered a non-exclusive set of criteria, as articulated in the *Winter* case:

 1. The characteristics of each child, including age, maturity, mental and physical health.
 2. The emotional, social, moral, material, and educational needs of the child.
 3. The characteristics of each parent, including age, character, stability, mental and physical health.

4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.

5. The interpersonal relationship between the child and each parent.

6. The interpersonal relationship between the child and its siblings.

7. The effect on the child of continuing or disrupting an existing custodial status.

8. The nature of each proposed environment, including its stability and wholesomeness.

9. The preference of the child, if the child is of sufficient age and maturity.

10. The report and recommendation of the attorney for the child or other independent investigator.

11. Available alternatives.

12. Any other relevant matter the evidence in a particular case may disclose.

223 N.W.2d at 166-167. When determining whether joint physical care is appropriate, "our case law requires a multi-factored test where no one criterion is determinative." *In re Marriage of Meierotto*, No. 15-0047, 2015 WL 5968895, at *2 (Iowa Ct. App. Oct. 14, 2015) (citing *Hansen*, 733 N.W.2d at 697). Physical care decisions rely on the same criteria regardless of whether the case involves a dissolution of marriage or unwed parties. *Jacobson v. Gradin*, 490 N.W.2d 79, 80 (Iowa Ct. App. 1992).

In applying these legal principles, we determine joint or shared physical care is appropriate for these parties and in L.R.'s best interest. Although Lindsay contends Zach is not a suitable custodian for the child, upon our review of the record, we agree with the district court that both parties are suitable custodians. Both are physically and mentally capable of providing for L.R.'s psychological and emotional needs. Zach has matured and provides suitable care when L.R. is with

him. We agree L.R.'s best interests are met by spending the maximum amount of time with both parents.

Lindsay contends that she and Zach are not able to communicate with each other regarding L.R.'s needs. We do not find this supported by the evidence. The parties primarily communicate by texting. A substantial amount of these texts were admitted as an exhibit at trial. The primary conflict between these parties involved the breakdown of their personal relationship.. The sheer volume of texts belies the claim that they cannot communicate. Although many of these communications related to their failed relationship, when required to discuss care arrangements for L.R., we discern no significant difficulty communicating in a cooperative and respectful manner.

Our review also refutes Lindsay's claim that Zach is disrespectful to her and intimidating. We agree with the district court that as the parties move on from the frustration of their failed relationship and focus on parenting L.R., their communication will improve. One or two "cherry picked" examples by Lindsay of troubled texting from the volume of texts between them does not outweigh what we discern from our overall view of the text messages. As it is, the parties appear currently capable of communicating satisfactorily with each other when it comes to L.R.

We further find that both parents have actively cared for L.R. since his birth. Although Lindsay is opposed to joint physical care, each can support the other's relationship with L.R. The evidence does not show any concern in this case about the parties' physical safety from the other. Lindsay voices concern for L.R.'s safety when with Zach due to his prior OWI convictions and license suspension, but the

recent incident of driving while barred did not involve L.R. Testimony supports that Zach is a loving and care-providing father to L.R. There is no evidence that L.R.'s safety is at risk when with either parent. We agree with the district court that Zach has been able to put his OWI issues behind him and make good decisions for L.R.; the lingering licensing issues do not, in our view, overcome L.R.'s interest in maintaining his relationship with his father.[3] Zach has a limited license that allows him to drive to and from work and daycare. For other excursions, Zach testified he utilizes the help of family and friends. He also testified he intends to move to Dike when L.R. starts preschool, which will alleviate some of these concerns.

Lindsay argues that Zach is not as attentive to L.R.'s special needs as she is and for this reason she is better suited to tend to him and entitled to physical care. She points out that Zach initially resisted the cochlear implants, delayed his approval, and has not been engaged with the speech therapist. However, other testimony shows that Zach researched the proposed surgery of implants, provided timely approval, was present for both surgeries, has attended over twenty-five of L.R.'s doctor appointments, and provides appropriate care. Since Zach currently resides in a school district different than Lindsay, the speech therapist was not permitted to provide therapy at Zach's residence and he was required to set that up through the local school district.

---

[3] Evidence was presented of Zach's arrest just before trial for driving while barred that was pending and had not yet been resolved at the time of trial. Under our rules, on appeal we are restricted to examining the record made at the trial. As much as we would like to know what has transpired since the trial, and such knowledge could potentially help resolve issues and move this matter and the parties along more expeditiously to a final resolution, it is not within our purview. *See In re Marriage of Rodasky*, No. 16-1312, 2016 WL 7077920, at *1 (Iowa Ct. App. Dec. 2, 2016).

Lindsay has taken lessons to learn sign language and to help teach L.R. signing so that he can communicate better. Zach has not done so. Due to L.R.'s tender age at one and a half, it is unclear the extent to which this is currently useful. It likely will be more so in the future. In learning sign language, Lindsay has shown an extra degree of attending to L.R.'s special needs, which is commendable, but we cannot say this alone tips the scale in her favor so as to override shared physical care. Zach has shown sufficient concern and attentiveness to L.R. and his special needs to justify a shared physical care arrangement.

Having reviewed each of Lindsay's arguments for physical care, we do not find them adequate to override shared physical care with Zach as being in L.R.'s best interest.

### C. Request for a special needs best interest standard.

Lindsay contends the "best interests'" standard must be applied differently to children with special needs and should include an assessment of the particular child's special needs because they require a higher level of collaboration between the shared care parents. Lindsay asks us to adopt a "best interest of the special-needs child" analysis. She argues the criteria to be applied in custody cases should focus more on the special needs of the child than on the characteristics of the parents when it involves a child with special needs. For this reason, she urges us to adopt a standard that places the special needs of a child as the most important consideration in determining physical placement of the child.

We must decline Lindsay's invitation for two reasons. First, she cites no authority in support of such a rule. Under the appellate rules, cases are transferred to the court of appeals for application of existing legal principles or if they are

appropriate for summary disposition. Iowa R. App. P. 6.1101(3)(a), (b). As we have previously found, it is not for our court to change existing legal principles. If a separate criterion for determining the physical-care arrangement of children with special needs is to be adopted, we must leave it to the legislature or the supreme court. *See Brooks v. Brooks*, No. 03-1217, 2004 WL 240207, at *2 (Iowa Ct. App. Feb. 11, 2004) (citing *State v. Rhomberg*, 516 N.W.2d 803, 805 (Iowa 1994) ("We leave it up to the legislature or our supreme court to establish new causes of action even when they appear to have merit.")).

Second, the existing legal principles for determining who should care for a child, as discussed in the *Winter* case, although not specific, appear to be applicable and provide sufficient guidance as to children with special needs. *See In re Marriage of McIntosh*, No. 98-1735, 1999 WL 823646 at *2 (Iowa Ct. App. Oct. 15, 1999) ("In concluding [the father] should be awarded primary physical care of [the child], we give considerable weight to the importance of his development as a deaf child. [He] is a child with special needs.") We are satisfied that the current law encompasses consideration of the specific needs of a child with special needs.

### D. Appellee's request for appellate attorney fees.

On appeal, Zach requested appellate attorney fees. An award of appellate attorney fees is within the discretion of the appellate court. *Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005) (citing *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996), *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991)). Whether such an award is warranted is determined by considering "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal."

*Ask*, 551 N.W.2d at 646. Considering these factors as applied to the facts of this case, we do not think an award of appellate attorney fees is appropriate.

**IV. Conclusion.**

Despite the trial court's failure to comply with Iowa Rule of Civil Procedure 1.904(1) to file written findings, upon our de novo review of the record in this appeal, we conclude the shared physical care ordered by the district court is in the child's best interest and should be affirmed. We are not at liberty to adopt a new best interests standard in determining physical-care arrangements for children with special needs, but we are able to make such a determination based upon the best-interests standards available under existing statutory and case law. We deny the request for appellate attorney fees.

**AFFIRMED.**