# IN THE COURT OF APPEALS OF IOWA

No. 19-0238
Filed September 11, 2019

**JOSHUA PAUL THOMSEN,**
    Plaintiff-Appellant/Cross-Appellee,

**vs.**

**MAKINZIE ROSE NELSON,**
    Defendant-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Crawford County, Tod Deck, Judge.

Joshua Thomsen appeals and MaKinzie Nelson cross-appeals from the district court's custody decree. **AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

A. Eric Neu of Minnich, Comito & Neu, P.C., Carroll, for appellant/cross-appellee.

Michael J. Riley and Bryan D. Swain of Salvo, Deren, Schenck, Gross, Swain & Argotsinger, P.C., Harlan, for appellee/cross-appellant.

Considered by Tabor, P.J., and Mullins and May, JJ.

**MAY, Judge.**

This case is about K.R.T., the happy, healthy, thriving three-year-old child of Joshua Thomsen and MaKinzie Nelson. Following a trial on Joshua's custody petition, the district court entered a decree awarding joint legal custody, granting physical care to MaKinzie, and ordering robust visitation for Joshua. Both parents appealed.

Joshua argues the district court should have ordered joint physical care or, in the alternative, granted physical care to him. He also argues the district court should have accepted his proposed holiday visitation schedule.

MaKinzie generally defends the district court's decree. But she contends the court provided "excessive" visitation for Joshua and, moreover, failed to specify a proper location for her to pick up K.R.T. following visitation.

We affirm on all points except for the holiday visitation schedule, which we modify.

## I. Background Facts and Proceedings

Joshua and MaKinzie began their relationship in 2014. The couple moved in together in October 2015. K.R.T. was born in July 2016. Joshua was employed as a farmhand. He was the main source of income during the relationship while MaKinzie attended cosmetology school and cared for K.R.T. Both parties agree MaKinzie was the primary caretaker of K.R.T. while Joshua worked.

By October 2017, the couple had split and Joshua moved out. Joshua later purchased a home with his girlfriend. She has three young children from a previous marriage.

In December 2017, Joshua filed a custody petition.[1]  Following trial, the court entered a decree awarding joint legal custody, placing physical care with MaKinzie, and providing extraordinary visitation for Joshua.

Joshua appeals and MaKinzie cross-appeals.

## II.  Standard of Review

Our review of custody determinations is de novo.  *See* Iowa R. App. P. 6.907; *Pistek v. Karsjens*, No. 18-0621, 2019 WL 1933995, at *2 (Iowa Ct. App. May 1, 2019).  "Because the district court had the opportunity to listen to and observe the parties and witnesses, we give weight to its fact findings, especially when considering witness credibility.  However, we are not bound by them." *Pistek*, 2019 WL 1933995, at *2 (citation omitted).

## III.  Physical Care

As noted, Joshua argues the district court should have ordered joint physical care or, in the alternative, placed physical care with him instead of MaKinzie.[2]  We disagree.

Under Iowa Code section 598.1(4) (2017), joint physical care means "both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing

---

[1] The petition also requested paternity be established.  Paternity results demonstrated Joshua was the biological father of K.R.T.

[2] MaKinzie asserts Joshua did not preserve error on this issue.  She argues Joshua never requested physical care and points to his petition requesting joint legal custody and joint physical care.  However, the pretrial stipulation notes the parties made the following stipulation as to the issues: "[n]othwithstanding [Joshua's] desire to have primary physical care," Joshua "proposes joint legal and primary care be granted."  Moreover, at trial, the district court relied on the stipulation of issues, and Joshua argued the alternative proposals without objection.  We find this issue is properly preserved for our review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (noting an issue is properly before an appellate court when it was presented to and decided on by the district court).

routine care for the child and under which neither parent has physical care rights superior to those of the other parent." "Joint physical care anticipates that parents will have equal, or roughly equal, residential time with the child." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). "Given the fact that neither parent has rights superior to the other with respect to the child's routine care, joint physical care also envisions shared decision making on all routine matters." *Id.*

If joint physical care is not appropriate, the court must choose a primary caretaker who "has the responsibility to maintain a residence for the child and has the sole right to make decisions concerning the child's routine care." *Id.* (citing Iowa Code § 598.1(7)). "The noncaretaker parent is relegated to the role of hosting the child for visits on a schedule determined by the court to be in the best interest of the child." *Id.*

When determining the proper physical care arrangement, "[o]ur overriding consideration is the best interest[] of the child[]." *In re Marriage of Comstock*, No. 12-0297, 2012 WL 4901094, at *1 (Iowa Ct. App. Oct. 17, 2012). Thus, a court should order joint physical care only if will serve the child's best interest. Iowa Code § 598.41(5)(b).

"A multitude of factors go into a determination of whether joint physical care is warranted." *In re Marriage of Geary*, No. 10-1964, 2011 WL 2112479, at *2 (Iowa Ct. App. May 25, 2011); *see, e.g.*, Iowa Code § 598.41(3) (providing numerous factors for courts to consider, including "[w]hether the parents can communicate with each other regarding the child's needs" and "[w]hether both parents have actively cared for the child before and since the separation"). "Where both parents are suitable caregivers," though, the propriety of joint physical care

will usually turn on "four key considerations: (1) stability and continuity of caregiving; (2) the ability of [the parents] to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) the degree to which parents are in general agreement about their approach to daily matters." *Geary*, 2011 WL 2112479, at *2 (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 696–99 (Iowa 2007)).

The district court properly considered these factors in light of this family's unique circumstances. And it found that, although Josh has been an "engaged and appropriate father" and a dedicated provider, MaKinzie has "provided most of the day-to-day care for K.R.T." The child has thrived under this arrangement. Thus, the "concepts of continuity, stability, and approximation" weigh against joint physical care. *See Hansen*, 733 N.W.2d at 698. Moreover, although the parties enjoy "some agreement" concerning daily matters, the district court found serious deficiencies in the areas of communication, mutual respect, and conflict. *See Geary*, 2011 WL 2112479, at *2 (citation omitted). The parties are "severely hampered" in their ability to constructively communicate. They have often "engaged in communication that is not conducive to co-parenting." As the district court put it, there is simply "more conflict than is justified."

After weighing all of these circumstances, the district court concluded joint physical care is not in K.R.T.'s best interest. We agree.

We next consider whether the district court was correct in granting physical care to MaKinzie. When choosing a primary caregiver, "our governing consideration is the best interest[] of the child." *Agyepong-Yeboah v. Roeder*, No. 14-1882, 2015 WL 7575493, at *2 (Iowa Ct. App. Nov. 25, 2015). We pursue

"stability and continuity with an eye toward providing the [child] with the best environment possible for [the child's] continued development and growth." *Hansen*, 733 N.W.2d at 700.

The district court relied heavily on the fact MaKinzie has been the primary caretaker for much of K.R.T.'s young life. Specifically, the court noted,

> MaKinzie is better able to minister to the needs of the child. The factors of stability, continuity, and approximation weigh in favor of physical care being awarded to MaKinzie. This is not to suggest that Joshua is unstable. On the contrary, the court finds that he has exhibited slightly more stability than MaKinzie, but the court finds the continuity and approximation factors to be entitled to more weight in this instance.

We agree with the district court's reasoning and its conclusion. *See id.* (noting when a court must choose which caregiver should be awarded physical care, "the factors of continuity, stability, and approximation are entitled to considerable weight").

At the same time, we also share the district court's concern with "MaKinzie's willingness to adequately foster, support, and encourage the child's relationship with Joshua." We join the district court in reminding MaKinzie of her statutory obligation to "support the other parent's relationship with the child." Iowa Code § 598.41(5)(b). Like the district court, we expect MaKinzie to honor this obligation by supporting Joshua's relationship with K.R.T. going forward.

## IV. Visitation Schedule

Because we leave physical care with MaKinzie, we must next consider Joshua's visitation. A proper visitation schedule is one that serves the best interest of the child. *Hynick*, 727 N.W.2d at 579. Courts should award "liberal visitation rights where appropriate, which will assure the child the opportunity for the

maximum continuing physical and emotional contact with both parents . . . and will encourage parents to share the rights and responsibilities of raising the child." Iowa Code § 598.41(1)(a). Where appropriate, visitation "can even approach an amount almost equal to the time spent with the caretaker parent." *Hynick*, 727 N.W.2d at 579.

The district court awarded Joshua visitation "every other weekend from Thursday at 6:00 p.m. to Sunday at 6:00 p.m." and "every Tuesday from 2:00 p.m. to Wednesday at 8:00 a.m." Joshua also received holiday visitation plus alternating weeks during the summer.

MaKinzie claims that, because K.R.T. is "only two years old," the visitation awarded to Joshua was excessive. She claims we should modify the award "to grant him midweek overnights only when K.R.T. begins kindergarten, and only two full weeks of visitation in the summer."

We disagree. The district court found extraordinary visitation is appropriate in light of (1) previous concerns regarding MaKinzie's willingness to foster the relationship between K.R.T. and Joshua, (2) "Joshua's historical involvement in the care of the child," (3) Joshua's "desire to continue or increase that involvement," and (4) Joshua's flexible schedule. The record supports these findings, and we adopt them. Moreover, MaKinzie points to no reason why Joshua should have less visitation now than when the child is in kindergarten. Instead, we believe the district court's robust visitation schedule is in the child's best interest and will best ensure "the maximum physical and emotional contact between the child and both parents." So we decline to reduce Joshua's visitation.

MaKinzie also asks that we address the issue of transportation. The decree states: "The parent with visitation will pick up the child at the other parent's residence, school, or daycare at the beginning of visitation and the parent with physical care will pick up the child at the end of the visitation." MaKinzie asks us to specify a "neutral location" where she will pick up the child following Joshua's visitations. She notes that, at trial, Joshua mentioned Dunlap was "centrally located between the parties' residences." So, she asks us to order Dunlap as her pick up location.

Although the relevant decree language could be clearer, we agree with Joshua that the decree implies a roughly reciprocal plan: Just as Joshua will generally[3] pick up the child from MaKinzie's house, MaKinzie must retrieve the child from Joshua's house. We believe this plan fairly distributes the burden of transportation. We decline to modify on this basis.

Finally, Joshua asks us to modify the holiday visitation schedule to coincide with his girlfriend's children's schedule. He points out that, at trial, MaKinzie had no objection to his proposed arrangement. Indeed, MaKinzie testified she "think[s] [the children] have a fun time and it's fun for [K.R.T.] to be around" Joshua's girlfriend's children.

On appeal, though, MaKinzie contends the holiday schedule should remain as ordered. She notes "the parties have already begun the trial court's holiday schedule, and switching it will mean the same parent will get the same holidays two years in a row." These post-decree circumstances are not in our record. That

---

[3] By "generally," we mean Joshua picks up at MaKinzie's residence unless he picks up at school or daycare.

aside, MaKinzie does not dispute K.R.T. would benefit from Joshua's proposed change to the holiday schedule.

We conclude Joshua's proposed holiday schedule is in K.R.T.'s best interest. We modify accordingly.

## V. Appellate Attorney's Fees

Both parties request an award of appellate attorney fees. "In a proceeding to determine custody or visitation, . . . the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. "An award of appellate attorney fees is within the discretion of the appellate court." *Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005). In determining whether to award appellate attorney fees, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (quoting *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996)). After considering those factors, we decline to award appellate attorney fees to either party.

## VI. Conclusion

We affirm the district court's grant of physical care to MaKinzie. We also affirm the district court's visitation schedule but with these modifications: On even years, Joshua shall have Spring/Easter Break, July 4th, Thanksgiving, and the second half of Christmas Vacation. And MaKinzie shall have Memorial Day, Labor Day, and the first half of Christmas Vacation. On odd years, Joshua shall have Memorial Day, Labor Day, and the first half of Christmas Vacation. Likewise,

MaKinzie shall have Spring/Easter Break, July 4th, Thanksgiving, and the second half of Christmas Vacation.

**AFFIRMED AS MODIFIED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**