# IN THE SUPREME COURT OF IOWA

No. 125 / 05–2115

Filed September 5, 2008

**IN RE THE MARRIAGE OF ELIZABETH A. BRIDDLE AND DAVID J. BRIDDLE**

**Upon the Petition of ELIZABETH A. BRIDDLE,**

Appellee,

**And concerning DAVID J. BRIDDLE,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble (enforcement of settlement agreement) and Jerrold W. Jordan (decree), Judges.

Further review of a dissolution of marriage action in which the court of appeals ordered enforcement of a settlement agreement reached through mediation. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED, AND CASE REMANDED.**

Patricia A. Schoff, David Swinton, and Margaret C. Callahan of Belin Lamson McCormick Zumbach Flynn, a Professional Corporation, Des Moines, for appellant.

John C. Conger, West Des Moines, for appellee.

**HECHT, Justice.**

After engaging in contentious discovery disputes for more than two years, the parties spent a long day negotiating a settlement of their dissolution action with the assistance of a mediator. The mediator summarized the terms of the accord in a letter to the parties' counsel, but the parties were subsequently unable to agree upon a proposed decree. The district court refused to enforce the mediated settlement, a trial was held on all disputed issues, and a dissolution decree was entered. The court of appeals affirmed the dissolution of the parties' marriage but reversed the balance of the district court's decision, concluding the settlement should be enforced. We vacate the decision of the court of appeals, affirm the dissolution decree as modified herein, and remand to the district court for entry of a decree consistent with the terms of the settlement reached by the parties.

## I. Factual Background and Proceedings.

Elizabeth and David Briddle met while they were employed as real estate agents. They were married on September 12, 1992. Elizabeth and David are the parents of three minor children.

David acquired minority-shareholder interests in several corporations that lease space and provide management services to antique dealers. The five corporations do business under the name of "Brass Armadillo" in Des Moines, Omaha, Kansas City, Phoenix, Denver and Cincinnati. Three of the corporations are Iowa corporations, and the others are incorporated in Nevada.

Elizabeth finished her undergraduate degree after the marriage and resumed selling real estate. She interrupted her real estate career to become a stay-at-home mother. Marital discord arose, and Elizabeth filed a petition for dissolution on October 23, 2002. She returned to school at Des

Moines Area Community College in the fall semester of 2002 and completed her training in medical sonography at Mercy College of Health in May 2005. Although she was diagnosed with Crohn's disease during the marriage, the evidence establishes that the disease is controlled with medications. She is employed in the medical field in Iowa City and earns $46,000 per year.

Elizabeth requested production of documents evidencing David's income and the value of his minority interests in the several Brass Armadillo corporations. On several occasions during the litigation, the district court held hearings calculated to resolve the parties' protracted discovery disputes. Unsatisfied with David's claims that he was not authorized as a minority shareholder to produce the corporations' financial records, Elizabeth filed a series of motions to compel production of documents.

David eventually filed suit against the corporations to obtain the requested information under Iowa Code section 490.1602(2)(*b*) (entitling shareholder to inspect and copy the corporations' accounting records "at a reasonable location specified by the corporation"). Elizabeth intervened in that litigation, and the court entered an order on August 14, 2004, directing only the Iowa corporations to produce their check ledgers, general ledgers, certified financial statements, profit and loss statements, and tax returns no later than September 25, 2004. The court's order did not, however, resolve the discovery dispute.

The Iowa corporations sought a protective order on the ground that the discovery of their records ordered by the court in the August 14 order exceeded the definition of "accounting records" contemplated by section 490.1602. Elizabeth filed another motion to compel production of documents and served on the corporations' custodian of records a notice of deposition and subpoena duces tecum demanding access to "any and all

books and records regarding the Nevada corporations" and "all credit card statements for the last 2 years." The Nevada corporations sought an order quashing the subpoena, contending the documents exceeded the scope of discovery previously ordered by the court. Yet another hearing was held by the court to address pending discovery motions on January 4, 2005. The court extended the discovery deadline to allow time for the production of documents and completion of depositions, and ordered David to produce "all information in his possession related to the out-of-state corporations."

Elizabeth's counsel deposed David in early January of 2005. David's deposition testimony disclosed the location of the corporations' accounting records in Ankeny and generally described the companies' accounting practices. Thereafter, Elizabeth's counsel again invoked the court's authority to gain access to the corporations' records at the Ankeny office location. On January 18, 2005, the district court ordered the corporations to produce their records "at the facility where they [were] located" or at some other place agreed upon by counsel.[1] The corporations produced to Elizabeth's counsel on January 21, 2005 a disk containing accounting records and supporting data for all of the Brass Armadillo corporations for the years 2003 and 2004.[2]

---

[1]The court's order expressed considerable frustration with the protracted and ongoing discovery disputes and scolded David for his "lack of candor" and for engaging in a "charade" of attempting to gain access to the corporations' documents through a lawsuit when, all the while, they were under his control and located in an Ankeny office. The court did not, however, deem David's conduct worthy of any sanction.

[2]The disk contained approximately 250,000 pages of the requested accounting and financial data stored by the companies using Quick Books software. Among the records produced were profit and loss statements, balance sheets, cash flow statements, accounts receivable and payable reports, general ledgers, and check registers. On the same day, David's counsel produced hard copies of the general ledgers for 2003 and 2004, periodic internal financial statements, and adjusting entries prepared by the corporations' certified public accountant for 2003.

Despite the corporations' production of their voluminous accounting records, Elizabeth's counsel insisted he be allowed to inspect the records at the corporations' Ankeny office. Another subpoena duces tecum was served on the corporations' custodian of records demanding production of the records at that office on January 31, 2005. The corporations sought a protective order, claiming they had satisfied their obligation to respond to Elizabeth's discovery requests. After yet another hearing, the court filed an order on February 1, 2005 generally directing Brass Armadillo, Inc. to fully comply with the court's prior discovery orders.[3]

The scheduled trial date of Tuesday, February 8, 2005 was drawing near. Having previously reached a stipulation resolving their disputes as to child custody and visitation matters, David and Elizabeth agreed to mediate the issues of child support, spousal support and property division on Saturday, February 5, 2005. After eleven hours of negotiations, the parties reached an accord on all issues. In relevant part, the agreement called for David to pay child support in the amount of $2200 per month, a property settlement of $425,000 in ten annual installments, and spousal support in an amount equal to five percent of the declining unpaid balance of the property settlement. David also agreed to pay Elizabeth $61,300 for the fees charged by her attorneys and expert witnesses. In a thorough letter to counsel for the parties on February 8, the mediator detailed the terms of the agreement and noted his understanding that counsel for the parties would draft the documents necessary to complete the dissolution.[4] Counsel for the parties notified the district court that a settlement had been reached.

---

[3]This ruling did not address whether the corporations were obligated to permit Elizabeth or her counsel access to the corporate office, and did not detail in what particular the corporations' production of records was then incomplete.

[4]The agreement also (1) required David to provide health insurance for the children, (2) allocated one parcel of Des Moines residential property to each party, (3) awarded to

On February 9, 2005, David's counsel faxed a proposed decree and supporting child support worksheets to Elizabeth's counsel. Elizabeth withheld her approval of the proposed decree, contending it constituted an admission by David that his earnings were more substantial than he claimed before and during the mediation session.[5] David filed a motion requesting enforcement of the agreement reached with the assistance of the mediator. Elizabeth opposed enforcement of the agreement, claiming it was induced by David's misrepresentation of his actual income. The district court held the agreement was not enforceable because David's failure "to disclose his actual income to [Elizabeth] before and during the mediation constituted a misrepresentation of fact" that "placed [Elizabeth] at a substantial disadvantage in the mediation" and impeded the court's evaluation of whether the settlement agreement was fair under the circumstances.

This court denied David's application for interlocutory appeal and the matter proceeded to trial. The district court adopted with minor exceptions,

_____

David his one-third ownership interest in a parcel of commercial real estate located near Kansas City, but promised to Elizabeth payment of fifty percent of the net proceeds from any future sale, (4) allocated a 1998 Pontiac Transport Van to Elizabeth and a 1977 Ford pickup to David, (5) set aside to Elizabeth an Edward Jones mutual fund account valued at $14,998, (6) divided equally between the parties three retirement accounts with a total value of $41,428, and (7) awarded to David his minority interest in the five Brass Armadillo corporations.

[5]David claimed before and during the mediation that his actual income was $72,800, the amount of his W-2 earnings disclosed in the parties' 2003 tax return. Although the parties' tax returns for the years 2000 through 2003 consistently showed "flow-through" distributions of income or loss from the Brass Armadillo corporations to David as fully detailed below, he claimed he did not actually receive payment for such distributions in 2003 or 2004. The child support worksheets prepared by David's counsel and presented to Elizabeth's counsel after the mediation, however, assumed David's income was $200,000 per year and Elizabeth's income was $42,000 per year. In the cover letter transmitted with the proposed decree and worksheets, David's counsel explained he made the income numbers inserted in the worksheets "jive" with the amount of child support the parties agreed upon during the mediation.

the proposed findings of fact, conclusions of law and decree submitted by Elizabeth's counsel. David was ordered in relevant part to pay $3000 per month for child support, $1000 per month for thirty-six months for spousal support, $250,000 per year for four years as a property division, and $207,783.05 to reimburse Elizabeth for attorney fees and expert witness fees. David appealed, assigning as error the district court's failure to enforce the mediation agreement, and, in the alternative asserting the financial obligations imposed under the decree are inequitable and oppressive. The court of appeals affirmed the dissolution of the parties' marriage, reversed the district court's refusal to enforce the settlement agreement, and remanded to the district court for entry of an order consistent with that agreement. We granted Elizabeth's application for further review.

## II. Scope of Review.

Our review of dissolution-of-marriage cases is de novo. *In re Marriage of Jones*, 653 N.W.2d 589, 592 (Iowa 2002). We adjudicate anew the issues properly preserved by the parties. *Id.* We are not bound by the trial court's findings of fact, but we give them weight especially when considering the credibility of witnesses. Iowa R. App. P. 6.14(6)(*g*).

## III. Discussion.

We begin our analysis with a review of the applicable legal principles. This court has recognized the validity of agreements resolving issues in domestic relations cases. *In re Marriage of Ask*, 551 N.W.2d 643, 645–46 (Iowa 1996). "A stipulation and settlement in a dissolution proceeding is a contract between the parties." *Jones*, 653 N.W.2d at 593. A party to such an agreement "is not entitled as a matter of right" to rescind such a stipulation. *Ask*, 551 N.W.2d at 646. Settlement stipulations are entitled " 'to all of the sanctity of an ordinary contract if supported by legal

consideration.'" *Id.* (citations omitted).  The court does, however, retain the power to reject the parties' stipulation if it is unfair or contrary to law.  *Id.*

At the outset, we note Elizabeth did not deny in the district court that the parties reached agreement on all disputed issues during the mediation conference.  She opposed enforcement of the agreement in the district court solely on the ground David misrepresented his actual income before and during the mediation and thereby fraudulently induced her to reach a settlement.  The claimed misrepresentation was clearly established, she asserts, by contrasting the amount of actual income claimed by David against the documents drafted by David's attorney following the mediation conference.  As we have noted, David claimed before and during the mediation his actual income was only $72,800, but the child support worksheets prepared by David's attorney in support of the proposed dissolution decree assumed David's income was $200,000.  Upon our de novo review of the record, we conclude the district court erred in finding David misrepresented his actual earnings before and during the mediation and fraudulently induced Elizabeth to enter the mediation agreement.

We now turn to a review of the financial information known to Elizabeth prior to the mediation conference on February 5, 2005.  She and her attorney were in possession of the parties' tax returns for the years 2000 through 2003.  Each of those returns disclosed David's W-2 income and, on Schedule E, reported supplemental "flow-through" income or loss based in part on distributions from the Brass Armadillo Subchapter S corporations:

| Year | W-2 earnings | Flow-through income |
|------|-------------|---------------------|
| 2000 | $66,800 | $ 24,298 |
| 2001 | $66,800 | ($ 8,795) |
| 2002 | $66,093 | $ 67,723 |
| 2003 | $72,800 | $134,861 |

The parties' 2004 tax return was not prepared before the mediation conference because the parties had sought an extension to file it after the corporations' tax returns were prepared. Consistent with their historical pattern, the corporations' returns for the 2004 tax year were not prepared until September of 2005.

Elizabeth's assertion, and the district court's finding, that David misrepresented his actual income are not supported by the evidence. Although the parties' 2003 joint income tax return reported total taxable income in excess of $200,000 from David's W-2 earnings and from the "flow-through" distributions reported by the corporations, David consistently maintained he did not actually receive payment of the $134,861 distribution reported on Schedule E of the parties' tax return for that year.[6] We find no evidence—other than the child support worksheets prepared by David's counsel after the mediation to support the amount of child support agreed to by the parties—tending to prove that distribution was actually paid to David by the corporations in 2003. Under the circumstances presented here, we find completely unpersuasive Elizabeth's claim of shock and surprise after viewing the child support worksheets attributing to David income of $200,000. As David's counsel's post-mediation cover letter of February 9, 2005 clearly communicated, the worksheets assumed David had annual income of $200,000 in order to make the numbers "jive" and support a child support award of $2200 per month. We find no misrepresentation occurred because David's actual income was in fact what he had represented it to be, $72,800 per year.

We also reject the district court's finding that the settlement agreement reached by the parties in the mediation conference should not be

---

[6]David also consistently maintained he did not receive a payment from the corporations during 2004.

enforced because Elizabeth and her counsel were disadvantaged by the recalcitrance of David and the corporations in their responses to discovery requests. In addition to the parties' tax returns produced by David long before the mediation occurred, Elizabeth, her counsel, and her experts were also in possession of the voluminous accounting records produced by the Brass Armadillo corporations on January 21. Although these records were produced by the corporations only after litigation was commenced against them and the court entered several orders mandating their production, Elizabeth, her counsel, and her valuation experts did have access to the records approximately two weeks prior to the mediation conference.[7] We find that although David and the corporations may be justly criticized for their recalcitrant approach to discovery matters, Elizabeth was in possession of the relevant financial information sufficiently in advance of the mediation conference to engage in meaningful negotiations during the mediation conference that lasted eleven hours.

A stipulation will be enforced if it constitutes an appropriate and legally approved method of disposing of the contested issues. *See Jones*, 653 N.W.2d at 593–94. As we have noted, the decree ultimately entered by the district court on October 27, 2005 was significantly more favorable to Elizabeth than the terms of the mediation agreement. This fact is not controlling, however, in our determination of the validity of the settlement agreement. The validity of the solutions reached in the parties' settlement agreement need not be those the court itself would have adopted if it were adjudicating the controversy. *Ask*, 551 N.W.2d at 646.

---

[7]Elizabeth continued to claim David and the corporations had failed to produce all of their records until the trial began on September 13, 2005. We find it significant, however, that the experts who opined at trial as to the value of David's interests in the Brass Armadillo corporations relied on the accounting records produced by David and the corporations on January 21, 2005, more than two weeks before the mediation conference.

We find the terms of the settlement agreement were in all respects within the range of the evidence presented in the record. An equitable division of the parties' assets depends primarily on the hotly contested value of two assets: David's minority shareholder interest in the Brass Armadillo corporations and his interest in FLD Land Company which owns a parcel of commercial real estate near Kansas City. Although Elizabeth's expert valued David's interest in the Brass Armadillo corporations at $1,740,000, David's expert valued it at only $478,000. And while Elizabeth's expert valued David's interest in the commercial real estate at $433,000, David's expert placed a value of only $63,350 on that asset. Although the values placed on these key assets by the district court after trial were the higher values allocated to them by Elizabeth's experts, credible and compelling countervailing evidence from David's highly qualified experts supported the much lower valuations.

Upon our de novo review of the record, we find the settlement reached in the mediation conference constitutes an appropriate and legally approved method of disposing of the contested issues in the dissolution action. Given David's actual income of $72,800 per year at the time of the mediation and the range of the evidence as to the value of the two key assets owned by the parties, David's agreement to pay Elizabeth the sum of $425,000 over ten years as a property settlement, spousal support calculated at five percent per annum of the declining unpaid balance of the property settlement, and child support of $2200 per month constituted a fair resolution of the dispute.[8] Accordingly, we vacate the decision of the court of appeals. We

[8]The parties did not agree in their mediated settlement that David had income of $200,000 per year. The parties' mediation agreement that David shall pay $2200 per month as child support is based on his actual annual income of $72,800. Although this child support obligation agreed upon by the parties is higher than the child support guidelines would require given the parties' incomes, we find an upward adjustment is

affirm the dissolution decree as modified and remand to the district court for entry of a decree consistent with the terms of the settlement reached by the parties.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED, AND CASE REMANDED.**

All justices concur except Baker, J., who takes no part.

---

"necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of this case." Iowa Ct. R. 9.4.