**IN THE COURT OF APPEALS OF IOWA**

No. 16-1297
Filed February 8, 2017

**IN RE THE MARRIAGE OF JAMIE TEKIPPE n/k/a JAMIE WEISS
AND JOSEPH TEKIPPE**

**Upon the Petition of
JAMIE TEKIPPE n/k/a JAMIE WEISS,**
        Petitioner-Appellee,

**And Concerning
JOSEPH TEKIPPE,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Allamakee County, John J. Bauercamper, Judge.


        Joseph TeKippe appeals from an order approving the language of a qualified domestic relations order.  **AFFIRMED.**


        Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, LLP, Charles City, for appellant.

        Erik W. Fern of Putnam, Fern & Thompson Law Office, P.L.L.C., Decorah, for appellee.


        Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

"This case should serve as a vivid reminder to attorneys practicing matrimonial law to specifically address survivor rights when dividing retirement benefits," our supreme court warned in *In re Marriage of Morris*, 810 N.W.2d 880, 881 (Iowa 2012). Unfortunately, in reaching the property settlement they stipulated to be part of the decree dissolving their marriage, the parties here failed to specifically address whether the alternate payee of a retirement plan could designate a successor alternate payee. This appeal is the result.

Joseph and Jamie TeKippe[1] were married in 1994, and Jamie petitioned to dissolve the marriage in 2015. The parties reached a settlement agreement and filed a stipulation outlining the division of their property and debts, the award of spousal support, and their responsibilities regarding court costs and attorney fees. They further agreed that Joseph would receive a portion of Jamie's IPERS account acquired during the marriage using a service factor percentage method and divided in accordance with *In re Marriage of Benson*, 545 N.W.2d 252 (Iowa 1996). However, they were unable to agree to "the exact language of the [qualified domestic relations order (QDRO)]." With regard to the QDRO, the stipulation submitted to the district court states that "[i]f the impasse persists, it will be submitted to the District Court for decision at a later time."

The district court entered a decree dissolving the parties' marriage, which approved the terms and provisions of the stipulation and incorporated them into the decree. With regard to the IPERS account, the decree reflected the language contained in the parties agreement and stipulation, stating:

---

[1] Jamie is now known as Jamie Weiss.

3

[Joseph] shall receive a portion of [Jamie]'s IPERS account. The division of this IPERS account will be by QDRO to be prepared by the attorney for [Joseph]. It shall be the responsibility of the attorney for [Jamie] to timely review the QDRO and approve it if appropriate. At present, the parties cannot agree on the exact language of the QDRO. If the impasse persists, it will be submitted to the district court for decision at a later time.

Twenty-four minutes before the dissolution decree was entered, Joseph filed an application requesting a hearing on the QDRO, stating, "The parties cannot agree on the exact language required by IPERS to be included in a [QDRO]." Although the application did not provide further elaboration on the nature of the dispute, Joseph wanted to include language that would allow him to obtain some information about the account without Jamie's consent; name a successor alternate payee; and bar Jamie from taking a refund without the alternate payee's consent.

In her response, Jamie countered that the disputed provisions "were not bargained for nor provided in the parties' stipulation." Jaimie attached an IPERS manual outlining both the mandatory language required for a QDRO as well as optional provisions[2] that may be included. Jamie asked that the court prepare a QDRO using the mandatory language without any optional provisions, asserting that the court should construe any ambiguity in the terms and conditions of the stipulated agreement against Joseph because his attorney drafted it.

---

[2] These include an award of a share of dividends to an alternate payee, naming a successor alternate payee, requiring the member's lifetime benefits be paid under a particular option, barring the member from taking a refund without the consent of the alternate payee, and requiring the member to name the alternate payee as a beneficiary of the member's death benefits.

A hearing on the QDRO was held nearly two months after the dissolution decree was entered.[3] The district court entered an order approving the language of Jamie's proposed QDRO and an IPERS QDRO. The court agreed that if the parties had wanted to include the optional QDRO provisions, they should have specifically negotiated them as part of their settlement agreement. In the absence of an agreement regarding those specific provisions, the court declined to include them in the QDRO, holding that to do so would be "superimpos[ing] terms beyond the express agreement of the parties." Joseph appeals, and requests the court to order that the QDRO include a paragraph allowing him to name a successor alternative payee.

Our review of the order approving the QDRO language is de novo. *See Morris*, 810 N.W.2d at 885. On appeal, Joseph argues that as part of the marital property to be divided, the IPERS account "should carry with it the ordinary incidents of ownership" like the ability to transfer the interest at death. In contrast, Jamie's argument concerns interpretation of the parties' settlement agreement and stipulation. Neither party's approach is correct.

The dissolution decree is the final order adjudicating the parties' property rights. *See In re Marriage of Thatcher*, 864 N.W.2d 533, 538 (Iowa 2015). The orders on appeal, which determined the appropriate form of the QDRO and the QDRO, are supplemental orders to enforce the property division and are not a part of the underlying decree. *See In re Marriage of Brown*, 776 N.W.2d 644,

---

[3] The hearing was not reported, and a statement of the proceedings was never prepared and filed. *See* Iowa R. App. P. 6.806 (providing a mechanism by which a party may create a record of a hearing for which a transcript is unavailable if a party deems it necessary to complete the record on appeal).

649 (Iowa 2009). The decree's provisions regarding the property division are not modifiable. *See* Iowa Code § 598.21(7) (2015). Therefore, Joseph's argument regarding whether alternate-successor-payee rights should be included in the QDRO is irrelevant to the extent the parties' rights were determined by the decree.[4]

Jamie's focus on the parties' intent in entering the agreement and stipulation also misses the mark. It is true that a stipulation and settlement in a dissolution proceeding is a contract between the parties that is entitled to all the sanctity of an ordinary contract. *See In re Marriage of Briddle*, 756 N.W.2d 35, 40 (Iowa 2008). However, once the district court adopts the parties' stipulation and incorporates it into the dissolution decree, it is the decree—not the parties' agreement and stipulation—that determines the parties' rights. *See Morris*, 810 N.W.2d at 886.

The decree, like the stipulation, is silent as to whether a successor alternate payee may receive Joseph's share of the IPERS account if he predeceases Jamie. Faced with a similar situation in *Morris*, our supreme court "decline[d] to speculate whether the parties might have negotiated a different division of property" if survivorship rights had been addressed. *See id.* Instead, the court found "the better alternative at this juncture is to remand this action to the district court to determine the court's intent as to survivor benefits in the [decree]." But since *Morris,* we now have a clear guidance that all property issues must be incorporated into the decree and the district court may not enter

---

[4] Joseph's notice of appeal states he appeals only "the Order Regarding Qualified Domestic Relations Order filed July 20, 2016, and the IPERS Qualified Domestic Relations Order." He did not file a notice of appeal of the dissolution decree.

serial final judgments. *See In re Marriage of Thatcher*, 864 N.W.2d 533, 538 (Iowa 2015). Joseph is not asking for an interpretation of the decree as in *Morris*, rather he is asking the court to exercise its reservation of jurisdiction as set forth in the decree and order inclusion of a paragraph in the QDRO allowing him to name a successor alternate payee. To do so would bifurcate the property distribution issues contrary to *Thatcher*. We cannot grant the relief Joseph requests and we therefore affirm the district court.

Jamie requests that she be awarded $1500 in appellate attorney fees incurred in defending this appeal. This court has broad discretion in awarding attorney fees on appeal. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Considering these factors, we decline to award appellate attorney fees.

**AFFIRMED.**