# IN THE COURT OF APPEALS OF IOWA

No. 18-2018
Filed November 6, 2019

IN RE THE MARRIAGE OF MARK STEVEN MELROSE
AND CAROLE LYNN MELROSE

Upon the Petition of
MARK STEVEN MELROSE,
        Petitioner-Appellee,

And Concerning
CAROLE LYNN MELROSE n/k/a CAROLE LYNN BROWMAN,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Floyd County, Rustin T. Davenport,

Judge.


        Carole Browman, formerly known as Carole Melrose, appeals from the

spousal support provisions of the decree dissolving her marriage to Mark Melrose.

**AFFIRMED AS MODIFIED.**



        Matthew J. Brandes and Rae M. Kinkead of Simmons Perrine Moyer

Bergman, PLC, Cedar Rapids, for appellant.

        Steven P. Wandro and Kara M. Simons of Wandro & Associates, P.C., Des

Moines, for appellee.



        Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

Carole Browman, formerly known as Carole Melrose, appeals from the spousal support provisions of the decree dissolving her marriage to Mark Melrose. She argues the support awarded to her is inequitable and should be substantially increased. Upon our de novo review, we affirm the district court's decree as modified.

### I. Background Facts and Proceedings.

Carole and Mark married in 1990 and have two adult children. In August 2017, Mark petitioned seeking dissolution of their marriage. The matter went to trial in May 2018. At that time, Mark was fifty-seven and Carole was sixty. Both parties ran their own businesses—Mark an insurance agency and Carole a hair salon—but Mark was the breadwinner. Issues in dispute were the valuation of Mark's business and whether Carole should receive spousal support. Each party presented expert testimony with differing opinions of Mark's business's value.

In August 2018, the district court entered its decree dissolving the parties' marriage. The court found the reasonable valuation of Mark's business was $420,000. The court also determined Mark's annual income was $135,000. The court awarded Carole $1725 per month in spousal support. Both parties filed posttrial motions to amend the decree. Except for granting Carole's request to change her surname to Browman, the district court denied the parties' motions.

Carole now appeals the dissolution decree's spousal support provisions.[1] Other background facts will be discussed as necessary below.

---

[1] Mark filed a cross-appeal but dismissed his appeal in March 2019.

## II. Standard of Review.

Because marriage-dissolution proceedings are equitable proceedings, our review is de novo. *See* Iowa Code § 598.3 (2017); *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). In a de novo review, "we examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). Even so, we give weight to the fact findings of the district court, especially when considering the credibility of witnesses, though we are not bound by them. *See* Iowa R. App. P. 6.904(3)(g); *In re Marriage of Briddle*, 756 N.W.2d 35, 39 (Iowa 2008). Still, the district court is in "the best position to balance the parties' needs," *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015), and that court has considerable latitude when making a spousal support award. *See In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). On appellate review of a spousal support award, this court should only intervene if there has been a failure to do equity. *See Gust*, 858 N.W.2d at 416.

## III. Discussion.

On appeal, Carole contends the spousal support award was inequitable and should be increased. She asserts the court's award substantially underestimated Mark's ability to pay and was inadequate to provide for her reasonable needs. Carole and Mark each request an award of appellate attorney fees.

### A. Spousal Support.

Spousal support is "a stipend to a spouse in lieu of the other spouse's legal obligation for support." *In re Marriage of Tzortzoudakis*, 507 N.W.2d 183, 186 (Iowa Ct. App. 1993), and whether spousal support is warranted "is dependent on the facts of each case," *In re Marriage of Shanks*, 805 N.W.2d 175, 178 (Iowa Ct.

App. 2011). Courts balance the ability of one spouse to pay against the needs of the other spouse. *See Tzortzoudakis*, 507 N.W.2d at 186. We measure "need" objectively by what is required for a "spouse to become self-sufficient at a standard of living reasonably comparable to that enjoyed during the marriage." *Gust*, 858 N.W.2d at 411. In deciding whether spousal support is equitable, we consider statutory criteria, including: (1) the length of the marriage, (2) the age and health of the parties, (3) the property distribution, (4) the parties' education levels, (5) the earning capacity of the party seeking spousal support, (5) the feasibility of the spouse seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and (6) other factors relevant in an individual case. *See* Iowa Code § 598.21A(1); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

The district court determined Mark's annual income was $135,000 and Carole's earning capacity was $20,000. Balancing the amount Carole needed with the amount sustainable by Mark, the court awarded Carole traditional spousal support in the amount of $1750 per month. But the court noted "the amount of support is somewhat less than might otherwise be ordered due to Carole's substantial financial property allocation and equalization payment."

Carole insists Mark's income was much higher. She argues the support award should therefore be increased to $4500 per month, based on her needs and Mark's ability to pay.

Mark pays himself a salary along with the income he makes in his insurance agency. The district court explained, "Averaging the [Mark's] business income and Mark's salary for the past six years results in approximately $135,000 per year in

income for Mark." Carole maintains Mark's lower earnings in years 2012 and 2017 were outliers and should not be included in averaging his income. She asserts "the floor for Mark's earning capacity is $154,987," the average of his income for the years of 2013 through 2016. She also argued the court should have adjusted Mark's business income to eliminate the personal expenses, including the parties' health insurance, paid by the business and deducted for tax purposes. Adding the amount Carole asserts were personal expenses, Carole suggests Mark's annual income is $184,000.

Though the amounts for Mark's salary and Schedule E business income for 2012 and 2017 are not exactly in line with the numbers from the other years, the trial evidence does not support a determination that they are such outliers they must be excluded from the calculation. There was little testimony offered on the subject at trial. Nor does the record establish Mark manipulated the business's 2017 figures to lessen his income hoping to reduce any spousal-support award to Carole.

Additionally, Carole's expert showed he "attempted to add back in" the parties' personal expenses paid by the business in his determination that "an average fair market value salary was in the range of $70,000." There was no further testimony on the subject. The income determination found by the district court was similar to the amount Carole seemed to recognize as Mark's 2017 income on her affidavit. Though the district court did not use Carole's expert's exact valuation of Mark's business, the court relied heavily on the valuation favorable to Carole, only adjusting the marketability-discount percentage.

Ultimately, we find the court's determination that Mark's annual income was $135,000 to be within the range of evidence.

That being said, Mark's business was a family business of three generations. From the evidence presented at trial, it is clear the business was doing just fine. We agree with Carole that the court's emphasis upon the "substantial financial property allocation and equalization payment" allocated to justify a lower support award was not equitable, since the court only allocated to her an equal share of the property distribution. Moreover, Carole will be responsible for taxes upon the support award, while Mark will be able to deduct the spousal support payments from his earnings.[2] Finally, we believe the evidence at trial shows Carole's need for spousal support, given her health, age, and limited income capacity, is greater than the amount awarded by the court. Having considered all of the relevant factors, including, but not limited to, Carole's age, health, and income capacity, as well as Mark's ability to pay, we conclude upon our de novo review of the record that Carole's spousal support award should be

---

[2] Under section 11051 of the Tax Cut and Jobs Act of 2017 (TCJA), the spousal support deduction is eliminated for any dissolution of marriage or separation instrument entered into after December 31, 2018, and the ex-spouse receiving the support payments is no longer be required to include the support payments in income. Any dissolution of marriage or separation instrument finalized before January 1, 2019 (as here), was grandfathered—meaning that the old rules under Internal Revenue Code 26 U.S.C. §§ 71 and 215 for spousal support will continue to apply, even if the dissolution of marriage or separation instrument is modified in the future (unless the modification expressly provides that the TCJA amendments apply to such modification). *See* Justin T. Miller, *Tax Reform Could Make Divorce a Whole Lot More Taxing*, ABA Family Law Quarterly, Vol. 52, No.2 (Oct 2019), https://www.americanbar.org/groups/family_law/publications/family-law-quarterly/volume-52/issue-2/tax-reform-could-make-divorce-whole-lot-more-taxing/ - 47

increased to $3000 per month.  We affirm the district court's decree in all other respects.

We do note that, should his circumstances change substantially, Mark can request the decree be modified.  *See* Iowa Code § 598.21C(1); *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014).

### B. *Appellate Attorney Fees.*

Finally, both Carole and Mark seek an award of appellate attorney fees. Appellate attorney fees are discretionary, not a matter of right, and we consider the requesting party's need, the ability of the other party to pay, as well as the appeal's relative merits in deciding whether to award such fees.  *See McDermott*, 827 N.W.2d at 687.  Considering the relevant factors, we decline each request for appellate attorney fees in this appeal.

### IV. *Conclusion.*

We affirm the ruling of the district court as modified.  Any costs on appeal are assessed to Mark.

**AFFIRMED AS MODIFIED.**