# IN THE COURT OF APPEALS OF IOWA

No. 19-0766
Filed January 9, 2020

**IN RE THE MARRIAGE OF JODY MICHAEL NIBBELINK
AND DENENE MARIE NIBBELINK**

**Upon the Petition of
JODY MICHAEL NIBBELINK,**
        Petitioner-Appellee,

**And Concerning
DENENE MARIE NIBBELINK, n/k/a DENENE MARIE NUTT,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Sioux County, Jeffrey A. Neary,

Judge.


        Denene Nibbelink, now known as Denene Nutt, appeals various provisions

of the decree dissolving her marriage to Jody Nibbelink.  **AFFIRMED.**



        Amanda Van Wyhe of Van Wyhe Law Firm & Mediation Center, PLC, Sioux

City, for appellant.

        Kelly J. Goslinga of Clabaugh & Goslinga, PLC, Sioux Center, for appellee.



        Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

Denene Nutt, formerly known as Denene Nibbelink, appeals various provisions of the decree dissolving her marriage to Jody Nibbelink. Denene asserts the decree entered is inequitable in (1) underestimating the value of Integrity Concrete, LLC ("Integrity"), a limited liability corporation operating a concrete business, of which Jody was the sole shareholder; (2) treating the parties' post-separation debt differently; (3) dividing the parties' debts and assets and ordering no property settlement payment, and; (4) ordering each party to pay their own attorney and expert fees. We find no failure to do equity and therefore affirm.

**I. Background Facts and Proceedings.**

Jody and Denene were married in 2001. On April 5, 2018, Jody filed a petition to dissolve the marriage. On July 30, the parties filed a stipulation concerning temporary child custody, physical care, and parenting time.[1] A hearing on temporary matters was held, after which the court ordered Jody to pay temporary spousal support in the amount of $4000 per month, $338 per month in child support, and $10,000 in temporary attorney and expert fees. On August 23, however, the parties filed a post-hearing stipulation. Denene had moved from the parties' lake home in Ruthven to another house they owned in Sioux City.[2] The parties agreed Jody would pay $381.47 in child support and $3677 per month in temporary spousal support, Denene would be responsible for the costs of the

---

[1] The parties have two minor children and they agreed each parent would have physical care of one child. Denene also has an adult child from a former relationship who lives with her. Jody pays child support for a child from a former relationship.

[2] Jody and Denene owned four houses—the marital residence in Orange City, a lake home in Ruthven, a Sioux City rental house, and an Alton rental house.

Sioux City residence, Jody would pay the expenses for the parties' Alton rental house, the Orange City marital residence, and all of the expenses of Integrity. The parties' stipulation was incorporated by court order on August 27.

The dissolution trial was set for December 5. On November 21, the parties filed a pretrial stipulation, agreeing to child custody and visitation provisions. On December 4, the parties filed a pretrial stipulation noting the issues remaining for the court's determination were child support, medical support, attorney and experts' fees and court costs, division of debts and assets, property settlement, and spousal support.

At the time of the dissolution trial in December, Denene was forty years old and Jody was forty-six. After seventeen years of marriage and running a seemingly-profitable concrete business, the parties had few unburdened assets and had incurred large personal and business debts. Much of the focus of the dissolution trial was the value to be placed on Integrity. For several years, Integrity paid Jody's and Denene's salaries and personal expenses.[3] Denene's expert, Richard Vander Werff of Vander Werff & Associates, Inc., opined the value of

---

[3] As found by the trial court:

> For several years the parties paid much of their personal expenses as well as the business-related expenses of Integrity with the line of credit issued to Integrity. Little or no effort was made to separate out the business from the personal expenses each year. To be clear, it appears as if both parties were involved in this mix of personal and business expenses. Jody was actively involved in Integrity's bill paying approval process and Denene served as an office manager at one point and handled the accounts payable. Needless to say, this dissolution of marriage action has now revealed this activity and uncovered this deception. In an effort to value Integrity for purposes of this action, the experts utilized by both parties have recognized this activity and had to adjust their findings and opinions accordingly.

Integrity should be the net equity value, which he determined to be about $200,000. Jody's expert, Matthew Kelderman of Kroese & Kroese, opined the net equity value was $90,000.

The trial court determined Kelderman's valuation was the "more accurate and appropriate value," stating:

> This valuation acknowledges the reality of the marketplace for concrete businesses in the areas served by Integrity, the unique relationship that exists between Jody and Vander Berg Homes,[4] and its [inherrant] uncertainty—should that ever change—and also reflects the troubling aspect of the Nibbelink[s'] intermingling of their personal expenses with the expenses of Integrity. The court concludes that the overall net equity of Integrity Concrete is $90,000. This conclusion necessarily accepts the debt identified by the parties as attributable to Integrity as valid marital debt. Those items of debt in dispute as listed on the pretrial stipulation form B which are in dispute; i.e., the Integrity operating note—539 ($313,243.03) and Integrity operating note—726 ($72,539.75) are included in the valuation of Integrity and are all marital liabilities.

On January 29, 2019, Jody filed notice the parties' pontoon boat had been sold for $13,000. The court granted an application to divide the proceeds of the sale equally.

On February 6, Jody filed notice the Orange City residence had sold for $290,000—$208,649.83 of which was paid to the bank.[5] After deducting other

---

[4] When Jody and Denene were first married, Jody was employed by Vander Berg Homes as a supervisor. In 2013, Jody left Vander Berg Homes and formed Integrity. However, Integrity continued to provide the basement concrete work when Vander Berg Homes constructed a house. In 2018, Jody testified ninety to ninety-five percent of Integrity's business was work done for Vander Berg Homes. Pursuant to an informal arrangement, Integrity pays Vander Berg Homes a commission of $2000 for each concrete job Integrity performed for Vander Berg.

[5] This amount includes payment in full of the mortgage for the Orange City residence (principal owed at time of sale $140,522.36) and $70,000 for an Iowa State Bank operating note (taken out on July 31, 2018).

costs related to the sale, the net proceeds totaled $59,962.74, which was to be distributed pursuant to the decree.

On March 14, the district court filed its decree dissolving the parties' marriage, incorporating the child custody and parenting schedules as stipulated, and dividing the parties' assets and liabilities.[6] Summarizing the court's division, Denene was awarded assets worth $208,568.18, which includes the house in Sioux City, the entire net proceeds from the sale of the Orange City house, and fifty percent of the pontoon boat sale proceeds. She was also awarded sixty percent of the future net proceeds when the lake house is sold. Denene was responsible for liabilities of $111,577.41 (the house she was awarded had a mortgage of $88,421.05 and her car was encumbered by a $23,156.36 loan).

The court concluded Denene's credit card debt incurred post separation between February and December 2018 was not marital debt. The trial court explained:

> The parties' pretrial stipulation identify credit cards and charge accounts that have been used by the parties and where debt is incurred. The parties dispute whether the balances on some of these accounts should be included in the division of the marital estate. Specifically, the credit and charge card accounts in dispute are Denene's Capital One—XXXX account ($23,289.61), her Chase Amazon—XXXX account ($25,711.69), her Discover—XXXX account ($8007.44), her Kohl's—XXX account ($569.56), and her Victoria's Secret account ($2844.72). The Discover card account was paid in full each month when the parties were together. When the parties were together and these credit cards had balances, they were paid through Integrity. Denene wrote those checks while she was at Integrity. These personal expenses were characterized as business expenses regularly. This was equivalent to deliberate tax

---

[6] The court set out the division of assets and liabilities in a chart labeled Exhibit A. In ruling on a posttrial motion, the court noted a $2000 entry on Exhibit A in Denene's column for a "Vegas trip" should have been in Jody's column. The totals summarized incorporate that change.

avoidance or even fraud potentially as this evidence clearly indicates that no effort was made to separate out the business from the personal expenses at tax time. Both parties were actively engaged in this process and neither is excused from this behavior. Such behavior causes the court to suspect that similar behavior has been occurring for quite some time that never would have seen the light of day had it not been for the parties' marriage unravelling. Unfortunately for both parties, the unveiling of this behavior casts considerable doubt on each party's veracity and capacity to tell the truth. Further, the continued use and increasing credit balances on these credit cards by Denene reflects her inability to live within appropriate limits and to be disciplined enough to accept the realities now of living in a separate household from Jody.

Denene's $60,000 in credit card debt was incurred during the period of time Jody was ordered to pay many of Denene's living expenses and temporary child and spousal support (an amount Jody testified exceeded of $59,000). The trial court noted the amount of Denene's credit card debt included "at least $10,000 in attorney fees and $8000 for expert witness fees." The court concluded, "The credit card debt incurred by Denene . . . is not marital debt given the facts here."

Jody was awarded assets worth $205,654.70, which includes a $2000 "Vegas trip," half the pontoon boat sale proceeds, and a $5550.23 credit on one credit card. He was also awarded forty percent of the future net proceeds when the lake house is sold. He was to be solely responsible for liabilities totaling $301,931.43.[7]

Denene filed a motion to amend or enlarge. With respect to her request that the court order a property settlement award of $24,657.65, the court wrote:

The court concluded as it did with regard to its decision not to order any property settlement between the parties because of the

---

[7] We note the court's chart included a $69,839.43 operating note as a liability for Jody. However, as previously noted, the operating note was paid off with proceeds of the sale of the Orange City house. Jody's liabilities under the court's distribution chart total $371,770.86, from which we have subtracted $69,839.43.

considerable debt assigned to [Jody] for Integrity Concrete that was essentially non-business debt. [Jody] will be responsible for this debt as it is part of the business line of credit. The court concluded that it was not equitable to assign [Jody] the responsibility to pay that debt and require him to pay a property settlement payment to [Denene] when [Denene] was not responsible for the Integrity Concrete debt that was not business related.

Denene appeals.

## II. Scope and Standard of Review.

Because marriage-dissolution proceedings are equitable proceedings, our review is de novo. *See* Iowa Code § 598.3 (2018); *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). In a de novo review, "we examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). Even so, we give weight to the fact findings of the district court, especially when considering the credibility of witnesses, though we are not bound by them. *See* Iowa R. App. P. 6.904(3)(g); *In re Marriage of Briddle*, 756 N.W.2d 35, 39 (Iowa 2008).

## III. Discussion.

***A. Property Valuation.*** In dividing marital property, a court determines what is fair and equitable based upon the particular circumstances of the parties. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). "Although an equal division is not required, it is generally recognized that equality is often most equitable." *Id.* (citation omitted). "[W]e will defer to the trial court when valuations are accompanied with supporting credibility findings or corroborating evidence." *In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct. App. 1999).

At trial, both parties presented expert witnesses who testified about various valuation methods with respect to Integrity. The trial court determined Kelderman's

valuation was the "more accurate and appropriate value." The court's valuation is within the range of evidence and supported by the court's reasoning. Because the district court's valuation assigned to Integrity is within the range of permissible evidence, we affirm. *See In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013); *In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007).

**B. Post-separation Debt.** Denene argues that because the trial court treated Jody's post-separation debt of $268,054.37 (i.e., Integrity operating notes) as a marital debt, her post-separation credit card debt of $60,423.02 should likewise be categorized as marital debt.

As stated above, the district court found Integrity operating notes #539 and #726 were marital liabilities. The court did so because the parties' personal expenses had historically been paid out of Integrity accounts. The court indicated this was an inappropriate practice but both parties were aware of and participated in the practice.

However, with respect to Denene's post-separation credit card debts, the court observed that post-separation, Jody was paying Denene spousal support, child support, and $10,000 toward attorney fees. The court wrote:

> It is hardly conceivable that Denene could accumulate such credit card debt as reflected on the pretrial stipulation for a period of less than [eleven] months. This record and Denene's testimony reflects that she incurred a total of $60,423.02 in credit card debt and charge card debt from the time she left the marital home and working at Integrity until the time of trial. It is accepted that this likely included at least $10,000 in attorney fees and $8,000 for expert witness fees. . . . [I]n August of 2018 Denene owed over $30,000 in credit card. That debt nearly doubled just four months later. The credit card debt

incurred by Denene, as noted above, is not marital debt given the facts here.[8]

Denene does not provide a reasonable basis for concluding her credit card debt was marital debt. We find no inequity under the circumstances.

*C. Equitable Division.* Denene argues the property division awarded by the district court is unequal and asserts Jody should be ordered to pay an equalization payment. "After assigning valuations, a determination must be made as to the *equitable* allocation of the assets and debts." *Vieth*, 591 N.W.2d at 640 (emphasis added). An equal division is not required. *Id.* "[W]e give strong deference to the trial court which, after sorting through the economic details of the parties, made a fair division supported by the record." *Id.* at 641.

> To achieve an equitable division, we apply the factors contained in [Iowa Code] section 598.21(5), keeping in mind there are no hard and fast rules governing economic issues in dissolution actions. Because precedent is of little value when framing a distribution, our decision must ultimately depend on the particular facts relevant to each case.

*McDermott*, 827 N.W.2d at 682 (citations omitted). We have reviewed the evidence presented and conclude the distribution of assets in relation to liabilities is equitable. We find no reason to disturb the court's findings and conclusions.

---

[8] The trial court expressed its concern about Denene's spending again in addressing its award of alimony, stating:
> The court acknowledges a real concern that if it awards Denene an amount of alimony that it may in some way encourage her unregulated spending and only serve to undermine her need to be self-sufficient both financially and personally. Nevertheless, the court concludes she should be awarded alimony in some amount. This award is primarily rehabilitative in nature as Denene needs to retool and redirect her life's work and employment.

The court awarded Denene $500 per month in spousal support for a period of three years. Denene does not appeal this portion of the decree.

***D. Trial Attorney Fees****.*  Denene contends the trial court should have ordered Jody to pay her trial attorney fees.   The trial court has considerable discretion in awarding attorney and expert fees.  *See In re Marriage of Scheppele*, 524 N.W.2d 678, 680 (Iowa Ct. App. 1994).  We conclude the district court did not abuse its discretion in refusing to award Denene trial attorney fees.

***E. Appellate Attorney Fees.***  Both parties seek an award of appellate attorney fees.  Appellate attorney fees are not awarded as a matter of right, but rather rest in this court's discretion.  *McDermott*, 827 N.W.2d at 687.  After considering the needs of the parties, their respective abilities to pay, and the relative merits of the appeal, we find neither party is entitled to an award of attorney fees in this appeal.

**AFFIRMED.**