# IN THE COURT OF APPEALS OF IOWA

No. 19-1111
Filed April 15, 2020

**GREGORY PAUL KARWAL,**
    Plaintiff-Appellant,

**vs.**

**JODI LYNN BROOKSHIRE-BAILEY,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Cass County, Margaret Popp Reyes,

Judge.


    A father challenges the district court's ruling on his petition to establish

paternity, custody, support, and visitation.  **AFFIRMED AS MODIFIED.**


    Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

    P. Shawn McCann of McGinn, Springer & Noethe, Council Bluffs, for

appellee.


    Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Greg Karwal appeals the district court ruling on his petition to establish paternity, custody, support, and visitation. Greg argues the court erred by granting Jodi Brookshire-Bailey physical care of their minor child, declining to split uncovered medical expenses equally between the parties, and determining the child's surname. Jodi requests attorney fees. We modify the district court order on the uncovered medical expenses and the child's surname and affirm the modified district court order. We decline to award appellate attorney fees.

**I. Background Facts and Proceedings.**

Greg and Jodi began dating in the fall of 2016. Soon after, they moved in together and Jodi found out she was pregnant. Greg was not supportive of the pregnancy, and they broke up. Their child, B.R.B., was born in June 2017.

On July 20, 2017, Greg petitioned to establish paternity, custody, support, and visitation. He asked for sole legal custody and physical care of the child. He also asked the court to impose permanent child support and medical support obligations; to add his name to the child's birth certificate; and to change the child's surname to Karwal.

On August 31, the State filed a child-in-need-of-assistance (CINA) petition for B.R.B. after it was reported to the Iowa Department of Human Services (DHS) that Jodi had tried to harm the child in utero. Jodi has consistently denied any allegation of harm. In addition to this CINA action, Jodi consented to the termination of her parental rights to two older children in separate juvenile court proceedings.

On September 6, the district court took judicial notice of B.R.B.'s pending CINA case to stay the paternity proceedings until the CINA case was resolved or until the district court was granted concurrent jurisdiction.

In the ongoing CINA case, the juvenile court removed the child from Jodi's care in November and ordered placement in foster care. By January, the child transitioned to Greg's care, and Jodi was given visitation. Her visitation with the child continued to increase until the parties had shared physical care before the trial on this matter.

The district court was granted concurrent jurisdiction on June 7, 2018, and lifted the stay on this case. At that point the case progressed through the district court resulting in a trial.

During the March 8, 2019 trial on the petition, Greg asked the court to take judicial notice of three juvenile court case files, including B.R.B.'s CINA case. The other two juvenile cases involved Jodi's two older children and did not involve B.R.B. Jodi's counsel objected. The court took "notice that those files do exist" but continued,

> If there are exhibits or particular pieces of information or rulings in those cases that we need to make a part of this record, what I would say is I'll just hold the record open at the end of today's proceeding as those are developed through the evidence in today's hearing and we can utilize those or upload those as exhibits or take a particular notice of individual exhibits in those cases or rulings in those cases in this matter. So, I won't take judicial notice of the files and everything in them. I will take notice that they do—that those cases are, in fact, cases that involve the same or some of the same parties in this case, and we'll see where the evidence goes and what other individual exhibits or information and rulings we need to take notice of in this case.

At trial the court heard testimony from: Greg; Jodi; Karen Mailander, the guardian ad litem from the CINA case; Jordan Vetter, a Family Safety, Risk, and Permanency (FSRP) worker; MarJean Pedersen, the DHS caseworker; Brittany Karwal, Greg's wife; Stephanie Kinzie; Mark Foegen, a Court Appointed Special Advocate volunteer; and Eric Bailey, Jodi's husband. These witnesses offered details about parts of the juvenile cases.

At the end of the trial, the court appeared to take a different approach to the juvenile court cases and stated,

> I believe what I said was I would take judicial notice of the files. If there was a final order in there, I would take judicial notice of that. If you want the court to consider a specific order on a specific day, I'd prefer that it were uploaded as an exhibit similar to the September 21st order.

That said, in the court's May 23 ruling, the court again addressed the juvenile court cases,

> The court takes notice of the juvenile court files, but no specific documents from those files will be considered in this matter unless offered as exhibits in this case. Additional exhibits from the juvenile court file were discussed at trial, but not admitted into evidence. The court stated that it would not take judicial notice of any specific documents from the juvenile court file that were not uploaded as exhibits in this matter. Greg's counsel requested that the record remain open to allow him to upload Exhibits 2 through 4 into EDMS which the court notes have not yet been filed. The court directs Greg's counsel to file those exhibits within five (5) days of the date of this order. If the exhibits are not filed, they will not be considered a part of the record in this matter.

After considering all the evidence, the court ordered joint legal custody but concluded that shared physical care was not in the child's best interest. The court granted Jodi physical care. Then the court awarded Greg liberal visitation of every other weekend, every Wednesday from 6:00 p.m. until Thursday at 6:00 p.m., four

weeks of summer visitation, and traded holidays between the parties. As for uncovered medical expenses, in spite of a mediation agreement splitting these costs equally, the court ordered the parties to split these "expenses in proportion to their respective net incomes (60% for Greg and 40% for Jodi)." The court ordered the child's surname changed to "Karwal" or "Brookshire Karwal" but directed the parties to agree on which one.

Disputing the rulings, Greg filed a motion for stay, motion to reconsider, and motion for new trial, which were denied. Greg appeals. In his designation of appendix on appeal, Greg seeks to submit filings not only from B.R.B.'s juvenile court case but also from the other two juvenile court cases. Jodi objects to including these documents in the appendix and to any reference to these documents in Greg's appellate brief.

## II. Standard of Review.

"Generally, in paternity actions, we review issues 'ancillary to the question of paternity, such as support,' de novo." *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005) (quoting *Dye v. Geiger*, 554 N.W.2d 538, 539 (Iowa 1996)); *see also* Iowa R. App. P. 6.907. We give weight to, but are not bound by, the district court's credibility determinations. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

## III. Analysis.

We must first address whether we will take judicial notice of the prior juvenile court cases, including the documents from those cases Greg submitted in his designation of appendix. We will then address the merits of Greg's appeal and Jodi's request for appellate attorney fees.

**A. Judicial Notice.** Greg argues the district court took judicial notice of all three juvenile court files. Yet the court's decree suggests otherwise. So, alternatively, Greg argues we should take judicial notice of these cases and consider the documents from these cases on our review.

Iowa Rule of Evidence 5.201(b) provides:

The court may judicially notice a fact that is not subject to reasonable dispute because it:
    (1) Is generally known within the trial court's territorial jurisdiction; or
    (2) Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

A court "[m]ay take judicial notice on its own," but "[m]ust take judicial notice if a party requests it and the court is supplied with the necessary information." Iowa R. Evid. 5.201(c). "The court may take judicial notice at any stage of the proceeding," including on appeal. Iowa R. Evid. 5.201(d); *State v. Washington*, 832 N.W.2d 650, 655 (Iowa 2013). "However, '[t]he general rule is that it is not proper for the court to consider or take judicial notice of the records of the same court in a different proceeding without an agreement of the parties.'" *Washington*, 832 N.W.2d at 655–56 (quoting *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 460 N.W.2d 858, 861 (Iowa 1990)).

Here, the district court knew that Jodi had her parental rights terminated to two other children. Even so, Jodi objected to the district court taking judicial notice of the entirety of the prior juvenile court case files. The court agreed and, more than once, instructed Greg to submit as exhibits any documents from the prior juvenile court cases he wished the court to consider in making its ruling. While the court's statements at the end of the trial seem to contradict its original ruling, the

court clarified its original position in its written ruling. The court held the record open for five days after entering the order to allow Greg to submit documents he believed were relevant.

And Greg made available some juvenile court materials. He limited those juvenile court documents filed to: Exhibit 1, the September 21, 2018 permanency order from B.R.B's CINA case; Exhibit 2, a hospital record for the incident underlying B.R.B.'s CINA case; Exhibit 4, the adjudicatory and temporary removal order from B.R.B.'s CINA case; Exhibit F, the motion to retain jurisdiction in B.R.B.'s CINA case; and Exhibit G, the juvenile court's ruling on the motion to retain jurisdiction. Plus the court admitted an affidavit of the adoptive mother of Jodi's two older children as well as two therapy notes involving the older children. We note the trial court and parties referenced the details of the juvenile cases many times during the trial. Yet ignoring the guidance in the decree, Greg submitted no other documents from the juvenile court files.

Under these circumstances, we decline to take judicial notice of the prior juvenile court cases or any of the documents Greg included in his designation of appendix that he did not submit to the district court as exhibits during and after trial. We will conduct our de novo review based on the record made at trial and without regard to the documents Greg submitted in his appendix that the trial court did not consider.

**B. Physical Care.** Greg argues the district court erred by granting Jodi physical care of the child. According to Greg, the district court gave too little weight to the concerns about Jodi's parenting and overlooked that he was the superior parent.

"Once it is decided that joint physical care is not in the best interest of the child[], the court must next choose which caregiver should be awarded physical care." *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007). "The parent awarded physical care is required to support the other parent's relationship with the child." *Id.* We "must examine each case based on the unique facts and circumstances presented" and give "considerable weight" to "the factors of continuity, stability, and approximation." *Id.* Another important consideration is "the degree of communication and mutual respect." *Id.*

After considering the applicable law and the specific facts of this case, the district court noted it was a "tough call" but concluded that Jodi should have physical care of B.R.B. and Greg should have liberal visitation. The court found that although Greg had been the child's primary caregiver since January 2018, Jodi's visitation had increased to the point that, at the time of trial, the parties were sharing care. The court found continuity of care for the child weighed equally in favor of both parents.

After considering Jodi's history, the court addressed the prior concerns with Jodi's parenting, noting, "By all accounts Jodi has cooperated with DHS and taken steps to improve her life and her parenting skills during the pendency of the juvenile court case involving B.R.B." The court found Jodi's testimony that she did not try to harm the child in utero credible.

But at the core, the court found that the current level of conflict between the parties weighed against shared care and also weighed against awarding physical care to Greg. The court granted physical care "to Jodi because she openly acknowledges the importance of BRB's relationship with Greg and is more likely

to foster an on-going relationship between Greg and BRB." In contrast, the court noted that Greg believed he was the superior parent, did not respect Jodi, and was not supportive of her relationship with the child. The court found Greg had trouble cooperating and communicating with Jodi, noting,

> The court is concerned that Greg was critical of Jodi throughout the trial and unwilling to acknowledge any positive efforts made by Jodi despite testimony showing otherwise. Greg and Jodi have differing parenting styles, but the court finds Jodi more willing to compromise and cooperate with Greg than Greg is with Jodi. The court fears that Greg's animosity toward Jodi may ultimately affect his ability to act in BRB's best interest as evidenced by the number of complaints involving DHS between these two parents.

We agree with the district court's decision to grant Jodi physical care of B.R.B. While Greg loves and is bonded with the child and provides him with excellent care, the trial court heard and saw the witnesses and made specific findings supported by the evidence. *See In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). That said, we agree with the district court's evaluation that Jodi's acknowledgement of Greg's strengths as a parent and Greg's lack of respect toward Jodi make Jodi the preferable physical caregiver. We affirm the district court's award of physical care.

**C. Visitation.** Greg argues that if we affirm the district court's physical care award, we should modify the visitation award to give him visitation for half of the summer. Interestingly, Greg now requests more visitation for himself than he was willing to give Jodi if he were the physical caregiver.

The court awarded Greg visitation every week from Wednesday at 6:00 p.m. to Thursday at 6:00 p.m., every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m., and four weeks in the summer in two-week stretches. These are

guidelines, and parents can agree to expand time beyond any court ordered time. *See In re Petition of Holub*, 584 N.W.2d 731, 733 (Iowa Ct. App. 1998) (noting that successful parenting involves setting aside petty differences to act in the child's best interest). But here we find the visitation parameters in the child's best interests and decline to disturb the district court's visitation award.

**D. Uncovered Medical Expenses.** Greg challenges the district court's decision to split the child's uncovered medical expenses sixty percent–forty percent instead of fifty–fifty as the parties agreed in the mediation agreement.

As for uncovered medical expenses, Iowa Court Rule 9.12(5) directs the court that

> the custodial parent shall pay the first $250 per year per child of uncovered medical expenses up to a maximum of $800 per year for all children. Uncovered medical expenses in excess of $250 per child or a maximum of $800 per year for all children shall be paid by the parents in proportion to their respective net incomes.

The parties agreed in a mediation scheduled about one month before trial to split the uncovered medical expenses fifty-fifty, ignoring the court rule. Settlement stipulations are a contract between the parties. *In re Marriage of Jones*, 653 N.W.2d 589, 593–94 (Iowa 2002). And the court recognizes the validity of agreements resolving issues but "retains the power to reject the stipulation" if it "is unfair or contrary to law." *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996).

Here the court determined the parties should split all uncovered medical expenses with Greg paying sixty percent and Jodi paying forty percent, after Jodi pays the first $250 of those expenses each year. In making this determination, the court considered the parties' income. Neither Greg nor Jodi works. Greg receives $2000 per month in social security disability benefits and sometimes earns money

by working on his parents' farm. On his child support worksheet, Greg used the minimum wage to calculate an annual income of $15,080. Greg used this income during mediation when the parties agreed to split costs equally. However, the district court used the $2000 monthly benefit amount to calculate Greg's annual income at $24,000. The court found that while Jodi was not working, she was capable of earning minimum wage for an annual income of $15,080. It was this difference in income that supported the court's sixty–forty split for uncovered medical expenses.

Jodi argues that at trial she learned Greg made more than originally thought and now the agreement is unfair. She champions the court's decision. Yet Jodi had counsel during mediation, the trial date was less than a month away, and she entered a contract with Greg willingly.[1] The complaint she lacked the information to meaningfully resolve the uncovered medical expense issue is unsupported in the record. *See In re Marriage of Briddle*, 756 N.W.2d 35, 40–41 (Iowa 2008) (enforcing mediation agreement even though wife asserted that husband misrepresented his income where information refuting her allegation was available to her). Moreover, at trial Jodi confirmed she remained in agreement with the terms.

Because the mediation agreement deviates from our court rule but still remains equitable, we see no reason to not enforce the terms. *See id.* at 41–42 (enforcing mediation agreement even though court might condone a different solution). We conclude the court should have enforced the mediation agreement

---

[1] Certainly a month out from trial the parties should have the requisite information to mediate the terms of a stipulation.

on the uncovered medical expenses with Greg paying fifty percent and Jodi paying fifty percent. We modify the district court ruling accordingly.

**E. Surname.** The district court ordered that the child's surname should be changed to "Karwal" or "Brookshire Karwal," but left it up to the parties to decide between the two. The parties cannot agree on a surname.

"When a parent unilaterally chooses a child's name, the other parent may request the court to examine the name issue." *Montgomery v. Wells*, 708 N.W.2d 704, 706 (Iowa Ct. App. 2005). "[W]hen the court first entertains an action between the parents to determine their legal rights and relationships with each other and the child, the court may also consider the legitimacy of the child's original naming as part of its determination of the child's legal status and custody." *Id.*; *see also id.* at 708–09 (listing factors to consider when determining a child's last name). Recently, "more courts have recognized the benefits of using a hyphenated surname for a child whose parents live separately." *See In re Uker*, No. 10-1829, 2011 WL 2420702, at *3 (Iowa Ct. App. June 15, 2011) (citing cases).

This child is incredibly fortunate to have two loving parents who are actively involved in his life. For that reason, we conclude the child's surname should reflect both parents. The child's surname will be "Brookshire Karwal."

**F. Appellate Attorney Fees.** Finally Jodi requests a $5000 award of appellate attorney fees. "In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. An award of attorney fees is not a matter of right but is within the sound discretion of the court. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). While Jodi

prevailed on most of the claims on appeal, after considering the parties' financial circumstances, we decline to award Jodi appellate attorney fees in this case.

**IV. Disposition.**

For the above stated reasons, we affirm the district court order as modified. The parties will each be responsible for their own attorney fees.

**AFFIRMED AS MODIFIED.**